**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Gil Melili, Esq. (SBN: 337116)
gil@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel On Signature Page]

*Attorneys for Plaintiff,*
*Victoria Palmer*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**VICTORIA PALMER, SUE KIM, and, IVAN ZERMENO, Individually and On Behalf of All Others Similarly Situated,**

**Plaintiffs,**

**v.**

**THE COCA-COLA COMPANY,**

**Defendant.**

**Case No.: 2:25-cv-04777-GW-CTS**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF VICTORIA PALMER'S MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**

**[*Redacted*]**

**Date:** October 1, 2026
**Time:** 8:30 a.m.
**Courtroom:** 9D

**HON. GEORGE H. WU**

**Complaint Filed:** May 27, 2025
**FAC Filed:** March 12, 2026



KAZEROUNI LAW GROUP, APC

## Table of Contents


**I. INTRODUCTION** ........ 1

**II. RELEVANT PROCEDURAL BACKGROUND** ........ 1

**III. FACTUAL BASIS FOR CLASS CERTIFICATION** ........ 1

**IV. STATEMENT OF APPLICABLE LAW ON CLASS CERTIFICATION** ........ 3

**V. THE PROPOSED CLASSSES ARE ADEQUATELY DEFINED AND BASED ON OBJECTIVE CRITERIA** ........ 5

**VI. THE PROPOSED CLASSES ARE SUFFICIENTLY NUMEROUS** ........ 8

**VII. SIGNIFICANT COMMON QUESTIONS OF FACT AND LAW** ........ 8

**VIII. COMMON ISSUES OF FACT AND LAW PREDOMINATE** ........ 10

A. Causation and Reliance ........ 11

i. *CLRA Claim* ........ 11

ii. *Breach of Express Warranty* ........ 12

iii. *Intentional Misrepresentation* ........ 13

iv. *Unjust Enrichment* ........ 14

B. Damages / Unjust Enrichment ........ 15

**IX. PALMER'S CLAIMS ARE TYPICAL TO THOSE OF THE CLASSES** ........ 16

**X. STANDING TO SUE FOR SUBSTANTIALLY SIMILAR PRODUCTS** ........ 17

**XI. PALMER AND HER COUNSEL ARE ADEQUATE CLASS REPRESENTATIVES** ........ 18

**XII. THE SUPERIORITY REQUIREMENT IS SATISFIED** ........ 19

A. Interests of Absent Class Members ........ 19

B. Extent and Nature of Other Litigation ........ 20




KAZEROUNI LAW GROUP, APC

C. Desirability of Concentrating Litigation in the Forum ................ 21
D. Manageability ................ 21
**XIII. CONCLUSION** ................ 23

KAZEROUNI LAW GROUP, APC

# Table of Authorities

CASES

*Abdullah v. U.S. Sec. Assocs., Inc.*,
731 F.3d 952 (9th Cir. 2013) ........ 8

*Abels v. JBC Legal Group, P.C.*,
227 F.R.D. 541 (N.D. Cal. 2005) ........ 11

*Ades v. Omni Hotels Mgmt. Corp.*,
No. 2:13-cv-02468-CAS(MANx),
2014 U.S. Dist. LEXIS 129689 (C.D. Cal. Sept. 8, 2014) ........ 20

*Ajaxo Inc. v. E*Trade Fin. Corp.*,
187 Cal. App. 4th 1295 (2010) ........ 14

*Allen v. Hyland*,
300 F.R.D. 643 (C.D. Cal. 2014) ........ 11, 17

*Amavizca v. Nutra Mfg., LLC*,
No. 8:20-cv-01324-RGK-MMA,
2021 U.S. Dist. LEXIS 36009 (C.D. Cal. Jan. 27, 2021) ........ 8

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 10, 20

*Aton Ctr. Inc. v. United Healthcare Ins. Co.*,
93 Cal. App. 5th 1214 (2023) ........ 13

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ........ 8

*Broomfield v. Craft Brew Alliance, Inc.*,
No. 17-cv-01027-BLF,
2018 U.S. Dist. LEXIS 177812 (N.D. Cal. Sept. 25, 2018) ........ 13

*Califano v. Yamaki*,
442 U.S. 682 (1979) ........ 4

KAZEROUNI LAW GROUP, APC

*Caro v. Proctor & Gamble Co.*,
18 Cal. App. 4th 644 (1993) ..... 12

*Cartwright v. Viking Indus.*,
No. 2:07-cv-02159-FCD-EFB,
2009 U.S. Dist. LEXIS 83286 (E.D. Cal. Sept. 11, 2009) ..... 4

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. June 18, 2010) ..... 15

*Cortez v. Purolator Air Filtration Prods. Co.*,
23 Cal. 4th 162 (2000) ..... 14

*Des Roches v. Cal. Physicians' Serv.*,
320 F.R.D. 486 (N.D. Cal. 2017) ..... 8

*Edwards v. Andrews*,
846 F. App'x 538 (9th Cir. 2021) ..... 22

*Eisen v. Carlisle & Joacquelin*,
417 U.S. 156 (1974) ..... 4

*Ferris v. Ford Motor Co.*,
No. 18-cv-03216-JSW,
2019 U.S. Dist. LEXIS 37864 (N.D. Cal. Mar. 8, 2019) ..... 6

*Galvan v. KDI Distrib.*,
No. SACV 08-0999-JVS (ANx),
2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25, 2011) ..... 21

*Gunaratna v. Dennis Gross Cosmetology LLC*,
No. CV 20-2311-MWF (GJSx),
2023 U.S. Dist. LEXIS 60796 (C.D. Cal. Apr. 4, 2023) ..... 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1988) ..... 8, 10

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ..... 4



KAZEROUNI LAW GROUP, APC

*Hardwick v. Hoovestol, Inc.*,
No. CV 20-7505-DMG (MAAx),
2022 U.S. Dist. LEXIS 183558 (C.D. Cal. Sep. 12, 2022) .... 16
*Hirsch v. Bank of Am.*,
107 Cal. App. 4th 708 (2003) .... 14
*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) .... 12, 15, 17, 20
*In re Connetics Corp. Sec. Litig.*,
257 F.R.D. 572 (N.D. Cal. 2009) .... 4
*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .... 14
*Keith v. Buchanan*,
173 Cal. App. 3d 13 (1985) .... 12
*Krueger v. Wyeth, Inc.*,
310 F.R.D. 468 (S.D. Cal. Oct. 7, 2015) .... 12
*Kwikset v. Superior Court*,
51 Cal. 4th 328 (2011) .... 1
*Lectrodryer v. SeoulBank*,
77 Cal. App. 4th 723 (2000) .... 14
*Mass. Mutual Life Ins. Co.*,
97 Cal. App. 4th 1282 (2002) .... 12
*McAdams v. Monier, Inc.*,
182 Cal. App. 4th 174 (2010) .... 12
*McCrary v. Elations Co., LLC.*,
No. 8:20-cv-01324-RGK-MMA,
2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) .... 12
*McKenzie v. Fed. Express Corp.*,
275 F.R.D. 290 (C.D. Cal. 2011) .... 4



KAZEROUNI LAW GROUP, APC

*Morales v. Kraft Foods Grp., Inc.*,
No. LA CV14-04387 JAK (PJWx),
2015 U.S. Dist. LEXIS 177918 (C.D. Cal. June 23, 2015) .......... 12
*Moreno v. AutoZone, Inc.*,
251 F.R.D. 417 (N.D. Cal. 2008) .......... 8
*Staton v. Boeing Co.*,
327 F. 3d 938 (2003) .......... 18
*Thomas v. Nestle United States*,
No. BC649863,
2020 Cal. Super. LEXIS 45291 (Los Angeles Sup. Ct. Apr. 29, 2020) .......... 15
*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) .......... 11
*Vernon v. City of Los Angeles*,
45 Cal. 2d 710 (1955) .......... 14
*Vickery v. SD Bullion, Inc.*,
No. 3:25-cv-1915-JES-DDL,
2026 U.S. Dist. LEXIS 10298 (S.D. Cal. Jan. 20, 2026) .......... 18
*Wal-Mart Stores v. Dukes*,
564 U.S. 338 (2011) .......... 4
*Weinstat v. Dentsply Internat., Inc.*,
180 Cal. App. 4th 1213 (2010) .......... 12-13
*Westways World Travel, Inc. v. AMR Corp.*,
218 F.R.D. 223 (C.D. Cal. 2003) .......... 20
*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) .......... 10
*Zinser v. Accufix Research Institute, Inc.*,
253 F.3d 1180 (9th Cir.) .......... 20

KAZEROUNI LAW GROUP, APC

OTHER AUTHORITIES

West's Ann. Cal. U. Com. Code (2002 ed.), 23A Pt. 1, foll. § 2313, com.3 .......... 12

RULES

Fed. R. Civ. P. 23 .......... 4, 8, 10, 16, 19, 22

TREATISES

C. Wright, A. Miller & M. Kane, *Federal Prac. & Proc. Civil 2d* § 1754 (1986) .......... 4




KAZEROUNI LAW GROUP, APC

## I. INTRODUCTION

Victoria Palmer's ("Plaintiff" or "Palmer") suit concerning The Coca-Cola Company's ("Defendant" or "Coca-Cola") sodas marketed under the Sprite and Fanta brands is straightforward. Defendant's "100% Natural Flavors" statement misleads California consumers into believing all of the ingredients which influence the flavor profile of the sodas are "natural," despite use of industrially manufactured ingredients. Such consumer claims are amenable to class action status because the class members suffered the same concrete injury in the same manner where Coca-Cola misrepresented the true nature of the flavoring of the beverages. Thus, the Court should grant Plaintiff's motion for class certification.[1]

A motion for leave to file documents under seal will be filed separately.

## II. RELEVANT PROCEDURAL BACKGROUND

Prior to filing suit on May 27, 2025, Palmer sent Coca-Cola a demand for corrective action, First Amended Complaint ("FAC"), ¶ 162 [Dkt. No. 52], which went unremedied by Cola-Cola, *id.* at ¶ 163. Following motion practice, Coca-Cola filed an Answer. Dkt. No. 56. The parties conducted substantial written and deposition discovery. On March 26, 2026, the Parties stipulated to limit discovery to class certification inquiries only (Dkt. Nos. 55 and 57).

## III. FACTUAL BASIS FOR CLASS CERTIFICATION

Consumers care about product labeling and representations thereon, including for online purchases. *See* FAC, ¶¶ 12, 34, 48, 51; Exhibit 1, Declaration of Stephen F. Hamilton, Ph.D ("Hamilton Decl."), ¶¶ 26-40[2]; *Kwikset v. Superior Court*, 51 Cal. 4th 328-29 (2011) ("Simply stated: labels matter.").

Palmer challenges fifteen Sprite and Fanta branded soft drinks . FAC, ¶¶ 11,

---

[1] Palmer reserves the right to seek leave to amend the motion based on further discovery obtained from Defendant due to recent unresolved discovery disputes. Ibey Decl., ¶ 17.

[2] Numbered exhibits are to the Declaration of Jason Ibey.



KAZEROUNI LAW GROUP, APC

16 ("Class Products"). In marketing the Class Products between May 27, 2021 and May 27, 2025 (the "Class Period"), Defendant included the "100% Natural Flavors" statement on the primary packaging (e.g., label) and secondary packaging (e.g., outer cardboard box). *See* Exhibit 3, 30(b)(6) Trans. 88:3-12, 92:19-23, 162:6-13, 168:18-25; Exhibit 15.[3] This claim was made on the Class Products during the *entire* Class Period (Exhibit 5, May 22, 2026 Suppl. Response to RFP No. 12; Exhibit 3, 30(b)(6) Trans. at 87:9-88:12; *see also* Exhibit 4 (Responses to RFA Nos. 1, 2, 3, 4, 5, 6, 7, 8, 10)), and is found on various retailer websites.[4]

The "100% Natural Flavors" statement (and virtually identical "100% naturally flavored" statement, which has the same meaning to consumers, Exhibit 2, Report of R. Sukumar, Ph.D. ("Sukumar Report"), p. 6), is part of a comprehensive marketing campaign by Coca-Cola over many years, involving several marketing channels, including the product packaging[5]; Coca-Cola's website[6]; in Coca-Cola's social media[7]; in marketing materials provided by Coca-Cola to bottlers and/or retailers[8]; and in marketing videos (*e.g.*, Exhibit 42,

---

[3] For background information regarding the 30(b)(6) deposition, including the Class Products, *see* Exhibit 3, 30(b)(6) Trans. 8:20-24, 9:15-23, 23:5-24:23, 25:20-23, 17:20-15:18, 27:6-10, 29:14-22, 31:16-32:4.

[4] Exhibit 20, PALMER000379-388; Exhibit 22, PALMER000435-440; Exhibit 21, PALMER000581-858; Exhibit 24, PALMER000587-588, 594; Exhibit 23, PALMER000595-599; Exhibit 25, PALMER000600; Exhibit 26, PALMER000601; Exhibit 27, PALMER000602; Exhibit 28, PALMER000603; *see also*, FAC, ¶¶ 54, 95, 100.

[5] *See id.*; *see also* Exhibit 43 (Fourth Suppl. Response to Interrogatories).

[6] Exhibit 17 (PALMER000203-208); Exhibit 19 (PALMER000248-249); Exhibit 18 (PAMER000269-270, 272-273, 284-285).

[7] Exhibit 16 (TCCC_0003125, 3920, 3354, 3363, 3432); Exhibit 29 (PALMER000344); Exhibit 30 (PALMER000345); Exhibit 31 (PALMER000360); Exhibit 32 (PALMER000363); *see also* FAC, ¶ 82.

[8] Exhibit 3, 30(b)(6) Trans. 101:19-102:7, 106:12-16, 193:3-195:15.



KAZEROUNI LAW GROUP, APC

TCCC_0002790).

Plaintiff contends that Coca-Cola misleadingly marketed Sprite and Fanta sodas sold in California with the "100% Natural Flavors" statement, even though certain flavoring ingredients (e.g., citric acid, potassium citrate and sodium citrate) are alleged to be industrially manufactured—not natural. FAC, at ¶¶ 2, 5, 10-16; 31-36, 62-65. This includes citric acid manufactured through a process involving genetically mutated mold (*Aspergillus niger*), hereafter "MCA," a method fundamentally distinct from natural extraction from citrus fruit, FAC, at ¶¶ 56-64.

Palmer purchased a Sprite Lemon-Lime 7.5 oz. 10-pack and a Fanta Orange 7.5 oz. 10-pack from Amazon.com on April 27, 2025, for a family gathering. Palmer Decl., ¶¶ 8-11, 26; Exhibit A thereto (("Palmer Trans."), 33:20-34:15). Palmer viewed the Amazon.com pages for the "Sprite Mini-Can 7.5 oz" ten-pack and the "FANTA ORANGE CAN 7.5 OZ X10" ten-pack (together, the "Products"[9]), as well as the Products' images. Palmer Decl., ¶¶ 5-7; Palmer Trans. 35:22-36:7, 68:18-25. Palmer saw that each of the Products were represented as containing "100% Natural Flavors" (Palmer Decl., ¶¶ 6-7[10]), and relying on this material representation as any reasonable consumer would, purchased the Products for $5.98 each. Palmer Decl., ¶¶ 5-10, 27, Exhibit B thereto.

After delivery on April 28, 2025, Palmer—a senior citizen—discovered on April 30, 2025, that the "100% Natural Flavors" statement was not true, following a discussion with her son. Palmer Decl., ¶¶ 2, 12-13. Upset by being misled by Coca-Cola, Palmer decided to bring suit to seek redress for herself and other consumers. Palmer Decl., ¶¶ 4, 13-16; Palmer Trans. 55:14-19, 144:23-24.

## IV. STATEMENT OF APPLICABLE LAW ON CLASS CERTIFICATION

Rule 23 governs the certification of class actions and has as main objectives

[9] Declaration of Matthew Palmer, ¶ 3, Exhibit A thereto.

[10] *See e.g.*, Exhibit 21, PALMER000581-585; Exhibit 24, PALMER000587-588, and 594; FAC, ¶¶ 95, pp. 33-34, and 100, p. 36.



KAZEROUNI LAW GROUP, APC

the efficient resolution of the claims or liabilities of many individuals in a single action as well as the elimination of repetitious litigation and possibility of inconsistent adjudication. *See Califano v. Yamaki*, 442 U.S. 682, 700-01 (1979); C. Wright, A. Miller & M. Kane, *Federal Prac. & Proc. Civil 2d* at § 1754 (1986).

"[I]t is well established that for purposes of class certification, the moving party does not need to establish a likelihood of prevailing on the merits." *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 297 (C.D. Cal. 2011). "The operative determination is whether class claims 'may be proven by evidence common to all class members,' not whether the evidence will ultimately be persuasive." *Cartwright v. Viking Indus.*, No. 2:07-cv-02159-FCD-EFB, 2009 U.S. Dist. LEXIS 83286, at *11 (E.D. Cal. Sept. 11, 2009) (citations omitted).

Rule 23 outlines a two-step process. First, Rule 23(a) sets forth four conjunctive prerequisites that must be met: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

While compliance with Rule 23(a) must be shown under a rigorous analysis, *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 351 (2011), "[i]n determining the propriety of a class action, the question is not whether the plaintiff . . . ha[s] stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Joacquelin*, 417 U.S. 156, 178 (1974). "Sufficient information must be provided to form a reasonable informed judgment on each of the requirements of Fed. R. Civ. P. 23." *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 576 (N.D. Cal. 2009). The party must also demonstrate that the action satisfies Rule 23(b).

//

## V. THE PROPOSED CLASSSES ARE ADEQUATELY DEFINED AND BASED ON OBJECTIVE CRITERIA

The Court should certify two California-only Classes under Fed. R. Civ. P. 23(b)(3):

> Sprite Class
> All persons in California who purchased one or more of **Sprite Lemon-Lime, Sprite (Lemon-Lime) Zero Sugar, Sprite Lymonade, Sprite Chill Strawberry Kiwi, Sprite Tropical Mix, Sprite Cherry, and Sprite Winter Spiced Cranberry,** between May 27, 2021 and May 27, 2025, that were marketed or represented as "100% Natural Flavors," whether on the product packaging (label or outer packaging) or in online marketing materials.
>
> Fanta Class
> All persons in California who purchased one or more of Fanta Orange, Fanta (Orange) Zero Sugar, Fanta Strawberry, Fanta Grape, Fanta Pineapple, Fanta Peach, Fanta Piña Colada, and Fanta Berry, between May 27, 2021 and May 27, 2025, that were marketed or represented as "100% Natural Flavors" and/or "100% naturally flavored," whether on the product packaging (label or outer packaging) or in online marketing materials.[11]

Together, the "Sprite Class" and "Fanta Class" are the "Classes." Excluded from the Classes are fountain drinks, Defendant's officers, directors, and employees, and persons who purchased the Class Products for resale.

The proposed Classes, separated by brand, are clearly defined and based on objective criteria, including: whether (i) the class member is a person in California who purchased a Class Product (whether in-store or online); (ii) the Class Product

---

[11] "Packaging" here means the primary packaging (e.g., label) and secondary packaging (e.g., outer packaging for a pack). *See* Exhibit 3, 30(b)(6) Trans. 88:3-12, 88:20-89:18, 92:19-23, 162:6-13, 168:18-25, 108:13-110:8-18, 122:20-124:19; *see id.* at 163:1-16; 166:21-168:25.



KAZEROUNI LAW GROUP, APC

includes the representation "100% Natural Flavors" for both Classes (or virtually identical "100% naturally flavored" claim online for the Fanta Class), on its product packaging or in other marketing materials (e.g., online for online purchases); and (iii) the purchase was between May 27, 2021, and May 27, 2025.[12] These two Classes are in line with the class definition proposed in ¶ 130 of the FAC.

A member of the Classes would not have any difficultly determining whether they fit one or both class definitions, particularly due to Coca-Cola's longstanding and widespread use of "100% Natural Flavors." *See* Exhibit 3, 30(b)(6) Trans. 88:3-12, 87:9-90:21, 91:18-92:2, 92:19-93:2, 162:6-13, 168:18-25; *see also, supra*, nn.4-7, above. Defendant's own [redacted]. Exhibits 10-11; Exhibit 3, 30(b)(6) Trans. 170:7-172:11, *see also id.* at 199:16-24. This is further evidenced by consumer complaints (Exhibit 39, TCCC_0000509; Exhibit 3, 30(b)(6) Trans. 146:19-147:16, 198:22-199:8; Exhibit TCCC_0002746). Palmer's materiality and consumer perception surveys show that the "100% Natural Flavors" statement is important to consumers (Exhibit 2, Sukumar Report, pp. 6-17; 30-31). Also, the overwhelming majority of survey respondents believe "100% Natural Flavors" means all of the ingredients which provide flavor to the Sprite product are "natural" (Sukumar Report, pp. 14-16; 30-31)—with the majority also believing the same for the Fanta product (*id.*).

Thus, any argument by Defendant that the misrepresentation is not relied upon by consumers, or is too small to be noticed, would be without merit, especially when the font size is the same as other important statements like the ingredients list and "no caffeine."[13] Within the Class Period, Defendant has even said "100% Natural

[12] There is a 4-year statute of limitation for the breach of express warranty claim. *Ferris v. Ford Motor Co.*, No. 18-cv-03216-JSW, 2019 U.S. Dist. LEXIS 37864, at *8 (N.D. Cal. Mar. 8, 2019) (citation omitted).

[13] Exhibit 3, 30(b)(6) Trans., 152:19-153:3, 153:10-21, 168:23-169:8; *see also*



KAZEROUNI LAW GROUP, APC

Flavors" on the *front* of the packaging for Fanta products.[14] Notably, the "100% Natural Flavors" representation appears *twice* on the packaging of Sprite Lemon-Lime and Sprite (Lemon-Lime) Zero Sugar products. Exhibit 3, 30(b)(6) Trans. at 153:4-14, 157:12-17, 162:6-9; Exhibit 15 (TCCC_0000115 and 000019).

Additionally, in online marketing materials provided by Coca-Cola and used by retailers such as Amazon.com and Target.com, the "100% Natural Flavors" representation is found prominently in the product description (i.e., "About this item") for Sprite products, and the "100% naturally flavored" representation is found prominently in the product description for Fanta products. *See* Exhibits 19-28. The "100% Natural Flavors" claim is also prominently found in online images for Sprite products, as shown for Sprite Lemon-Lime, Sprite (Lemon-Lime) Zero Sugar, and Sprite Lymonade. Exhibits 16, 21, 23, 28, 35, 36. This is in addition to Defendant's use of social media and other marketing materials. *See, supra*, n.4.

Defendant's [redacted] reflects, for example, such marketing statements for Sprite Lemon-Lime, Sprite Zero Sugar, Fanta Grape, Fanta Berry, Fanta Orange, Fanta Pineapple, Fanta Strawberry, and Fanta Peach. Ibey Decl., ¶ 68 n.2; Exhibit 38 (Excerpts of [redacted] showing alleged misrepresentations); Exhibit 3, 30(b)(6) Trans. 95:5-7, 106:12-16, 97:12-15, 100:4-10, 100:23-101:1, 104:13-106:7, 190:22-195:17. At least some of the Class Products were actually sold on Amazon.com during the Class Period (i.e., Sprite Lemon-Lime, Sprite (Lemon-Lime) Zero Sugar, Sprite Winter Spiced Cranberry, and Fanta Orange), based on their associated "ASIN" (Amazon Standard Identification Number). *See* Ibey Decl., ¶ 43, n.1; Exhibit 13 (TCCC_0000155); Exhibit 12 (showing ASIN # B06XCK1NGZ).

---

Exhibits 7-9 (examples of product images).

[14] *See e.g.*, Exhibit 16; Exhibit 27 (PALMER000602); *see generally*, Exhibit 3, 30(b)(6) Trans. 151:1-152:5.



KAZEROUNI LAW GROUP, APC

The "100% Natural Flavors" statement is also in marketing information provided by Coca-Cola to SmartLabel for its website. *See* Ibey Decl., ¶¶ 62-66, Exhibit 33 (PALMER000493-495); Exhibit 34 (PALMER000506-507); Exhibit 35 (PALMER000538); Exhibit 36 (PALMER000557-558); Exhibit 3, 30(b)(6) Trans. 158:23-159:13 (discussion of QR code for SmartLabel).

Based on the controlling decision in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017), Palmer is not required to show that it is administratively feasible to identify members of the Classes. *See also Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 511-12 (N.D. Cal. 2017). It is enough here that the class definitions describe "a set of common characteristics sufficient to allow" a prospective plaintiff to "identify himself or herself as having a right to recover based on the description." *Moreno v. AutoZone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008) (citations and internal quotation marks omitted).

## VI. THE PROPOSED CLASSES ARE SUFFICIENTLY NUMEROUS

There are likely hundreds of thousands Class members throughout California who purchased the popular Sprite and/or Fanta sodas. Although Coca-Cola unreasonably declined to stipulate to numerosity (Ibey Decl., ¶ 4), based on admissions and current evidence, numerosity is easily satisfied (Exhibit 4, June 5, 2026 Suppl. Responses to RFA Nos. 46-48; Exhibits 7-9, 11-12, 44; *see also Amavizca v. Nutra Mfg., LLC*, No. 8:20-cv-01324-RGK-MMA, 2021 U.S. Dist. LEXIS 36009, at *14 (C.D. Cal. Jan. 27, 2021) (citation omitted)), including based on common sense.

## VII. SIGNIFICANT COMMON QUESTIONS OF FACT AND LAW

Rule 23(a)(2) requires at least one significant common question of fact or law. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988) (citing Fed. R. Civ. P. 23(a)(2)); *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is



KAZEROUNI LAW GROUP, APC

a common core of salient facts coupled with disparate legal remedies." *Id.*

Common questions of fact in this case include, for example: (1) whether the Class Products included the "100% Natural Flavors" representation during the Class Period on the label and/or outer packaging; (2) additionally, whether the Fanta beverages were represented in online marketing as "100% naturally flavored" within the Class Period; (3) whether the Class Products contained citric acid; (4) whether the citric acid is natural or artificial; (5) for the Sprite Class, whether they contained one or more citrate salts that are natural or artificial; (6) whether citric acid (for the Classes) and/or the citrate salts (for the Sprite Class) influence the flavor profile of the Class Products; and (7) whether or not the citric acid was identified as a preservative. *See* FAC, ¶ 135.

Whether the citric acid and/or citrate salts are "natural," and whether they influence the flavor profile of the Class Products (such that the challenged representation is false or misleading to a reasonable consumer), are both merits inquires for a later date but will be decided on a common basis, either in favor of Plaintiff or Defendant, as the inquiry is binary. This is due to the common use of MCA—and the [redacted] for Sprite sodas. *See* Exhibit 3, 30(b)(6) Trans. 44:21-24, 63:11-14, 70:15-17, 116:16-118:4; Exhibit 4, June 5, 2026 Suppl. Response to RFA Nos. 15, 22. Defendant also admits citric acid was not labeled as a preservative. Exhibit 6 (First Suppl. Response to RFA No. 27).

Although Defendant does not consider citric acid and the citrate salts to be flavoring ingredients, the parties stipulated that evidence as to the flavoring function of the ingredients is not a class certification inquiry—it is purely a merits inquiry. *See* Exhibit 3, 30(b)(6) Trans. 114:18-23, 123:24-124:8; *see generally*, Dkt. No. 57. Regardless, there is current support for citric acid imparting a "sour" flavor. Exhibit 37 (PALMER000067-73); *see also* FAC, ¶¶ 61, 65 (regarding citric acid and citrate salts).

Common questions of law include, for instance, whether: (1) Coca-Cola's



KAZEROUNI LAW GROUP, APC

conduct violated the CLRA and other common law claims with respect to product false advertising, including reasonable consumer reliance; (2) whether Coca-Cola breached an express warranty (with the "100% Natural Flavors" claim); and (3) whether Class members suffered monetary harm and, if so, the appropriate amount of class-wide damages. *See* FAC, ¶ 135.

Defendant acknowledges that each of the Class Products' labels/packaging contained the "100% Natural Flavors" statement during the entire Class Period (Exhibit 5, May 22, 2026 Suppl. Response to RFP No. 12; Exhibit 3, 30(b)(6) Trans. 87:9-88:12, 92:19-23, 162:6-13, 168:18-25), and that its citric acid was not extracted from a plant (Exhibit 4, June 5, 2026 Suppl. Response to RFA Nos. 15 and 22), [redacted][15] (Exhibit 3, 30(b)(6) Trans. 61:11-13, 62:7-10, 117:21-25).

Therefore, Palmer has identified several common questions of fact and/or law that will drive this litigation, some of which may be answered based on current discovery prior to the merits stage.

## VIII. COMMON ISSUES OF FACT AND LAW PREDOMINATE

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). "Court[s] look[] at common factual link[s] between all class members and the defendants for which the law

[15] *Apergillus niger* is a mold—and such MCA must undergo a purification process before it can be used in consumer products. *See* FAC, ¶¶ 45, 49, 59, 64.





KAZEROUNI LAW GROUP, APC

provides a remedy." *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005). Moreover, "[i]mplicit in . . . the predominance test is . . . that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

"To determine whether questions of law or fact common to class members predominate, the Court must analyze each of Plaintiff['s] claims separately." *Allen v. Hyland*, 300 F.R.D. 643, 666 (C.D. Cal. 2014).

### A. <u>Causation and Reliance</u>

Plaintiff incorporates here the above commonality analysis.

#### i. *CLRA Claim*

The CLRA claim is appropriate for class resolution because, as explained above, the "100% Natural Flavors" statement for the Class Products was present on all the labeling/packaging. This alleged misrepresentation, including the virtually identical "100% naturally flavored" statement, was also present in product descriptions in online marketing for Fanta products.

These challenged statements were material to a reasonable consumer's decision to purchase the Class Products, as: (i) Defendant admits the "100% Natural Flavors" representation is a "factual statement" (Exhibit 3, 30(b)(6) Trans., 164:11-16); (ii) consumers have complained about how that statement could be true when, for example, the sodas contain no juice (Exhibit 39 (TCCC_0000509), *see generally*, 30(b)(6) Trans. 166:9-13); (iii) academic research reflects the value to consumers of "natural" product claims (Hamilton Decl., ¶¶ 26-46); and (iv) both Palmer's [redacted] consumer surveys establish the "100% Natural Flavors" claim is important (material) to consumers' purchasing decision (Exhibit 2, Sukumar Report, pp. 15-16, 30-31; Exhibit 1, Hamilton Decl., ¶ 31; Exhibits 10-11).

Therefore, causation (reliance), on a class-wide basis, may be established here by this showing of materiality. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919,





KAZEROUNI LAW GROUP, APC

1021 n.254 (C.D. Cal. 2015). If the Court finds that material misrepresentations have been made to the entire class, an inference of reliance arises. *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 178 (2010) (citing *Mass. Mutual Life Ins. Co.*, 97 Cal. App. 4th 1282, 1293 (2002)). A representation is considered material if it induced the consumer to alter their position to their detriment. *Caro v. Proctor & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993).

As in *McAdams*, the record here permits an inference of common reliance among the Classes pursuant to the CLRA, given that Coca-Cola made a uniform material misrepresentation to the Classes on the Class Products of "100% Natural Flavors" and/or similar language online, as explained above. *See* 182 Cal. App. 4th at 184 (rejecting lower court's denial of class certification); *see also McCrary v. Elations Co., LLC.*, No. 8:20-cv-01324-RGK-MMA, 2014 U.S. Dist. LEXIS 8443, at *43 (C.D. Cal. Jan. 13, 2014) (concerning a CLRA claim); *Morales v. Kraft Foods Grp., Inc.*, No. LA CV14-04387 JAK (PJWx), 2015 U.S. Dist. LEXIS 177918, at *18 (C.D. Cal. June 23, 2015) (finding predominance of common issues in false advertising case involving "natural cheese" representation); *see also Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 481 (S.D. Cal. Oct. 7, 2015) (involving a "massive advertising campaign").

Thus, the Court may infer reliance by absent Class members.

**ii. *Breach of Express Warranty***

To prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an "affirmation of fact or promise" or a "description of the goods"; (2) the statement was "part of the basis of the bargain"; and (3) the "warranty was breached." *See Keith v. Buchanan*, 173 Cal. App. 3d 13, 20 (1985) (internal quotation marks omitted). An express warranty claim *does not* require a showing of reliance under California law. "[B]reach of express warranty arises in the context of contract formation in which reliance plays no role." *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010).





KAZEROUNI LAW GROUP, APC

The California UCC does not require proof of reliance, either. The official comment to section 2313 of the code explains that "[i]n actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statement need be shown in order to weave them into the fabric of the agreement." Cal. U. Com. Code com., 23A pt. 1 (West's Ann. Cal. U. Com. Code (2002 ed.)) foll. § 2313, com. 3, p. 296.

Since Coca-Cola admits "100% Natural Flavors" is a "factual statement" (Exhibit 3, 30(b)(6) Trans., 164:11-16), this readily supports the predominance of common issues for the breach of express warranty claim—it is an affirmation of fact suggesting that all of the ingredients in the Class Products that influence the flavor profile are "natural." *See* Exhibit 2, Sukumar Report, pp. 14-16, 30-31. Similarly, since the statement "100% naturally flavored" is virtually identical, such that no reasonable consumer would see it as having a different meaning than "100% Natural Flavors" (Exhibit 2, Sukumar Report, p. 6; *see generally*, 30(b)(6) Trans. 164:9-19). These material "factual" statements create a presumption that Defendant's affirmations go to the basis of the bargain.

**iii. *Intentional Misrepresentation***

The intentional misrepresentation claim requires "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." *Aton Ctr. Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1245 (2023). Much like the CLRA, a showing of reliance for this claim is satisfied. *See Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF, 2018 U.S. Dist. LEXIS 177812, at *38 (N.D. Cal. Sept. 25, 2018). Also, "a presumption, or at least an inference, of [actual] reliance arises wherever there is a showing that a misrepresentation was material." *Id.* at *39 (internal quotation marks omitted and brackets in original). As with Palmer's CLRA claim (and as further explained below in terms of damages), the intentional misrepresentation claim is





KAZEROUNI LAW GROUP, APC

subject to class-wide resolution. *Id.* (citing *In re First All. Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006)).

Although not required, with respect to scienter, Coca-Cola's state of mind can also be answered based on common evidence, including awareness: (i) of consumer complaints about "100% Natural Flavors"; (ii) awareness of the materiality if the factual statement from its [redacted]; (iii) that its suppliers of citric acid and citrate salts were utilizing MCA (Exhibit 3, 30(b)(6) Trans. 37:12-23, 40:14-41:1, 43:1-44:5, 44:21-45:6, 46:8-47:4, 56:25-57:13, 61:11-13, 62:7-10, 77:7-78:8, 79:20-80:7, 81:12-82:3, 117:21-25); and (iv) at least some of the suppliers [redacted] (*id.* at 57:14-60:24, 72:8-73:3, 74:13-76:6).

**iv. *Unjust Enrichment***

A party is unjustly enriched when it receives and wrongfully retains a benefit at the expense of another. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 727 (2000). The amount by which a party has been unjustly enriched may be determined by the difference between the actual value of the product and the value actually received. *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 162, 174 (2000). "The term 'benefit' connotes any type of advantage." *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 722 (2003). The measure need not be exact—only formulated on a reasonable basis of computation. *See Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1305 (2010). Here, the amount by which Coca-Cola was unjustly enriched may be determined by comparing the value of the Class Products with the advertised "100% Natural Flavors" statement and the fair value of what was actually provided (i.e., Class Products with non-natural flavoring ingredients), and further by looking to its income from the sale of the concentrate. *See* Hamilton Decl., ¶¶ 77-80. *See e.g.*, *Vernon v. City of Los Angeles*, 45 Cal. 2d 710, 721 (1955).

\\



KAZEROUNI LAW GROUP, APC

**B. Damages / Unjust Enrichment**

Whether the Class members overpaid due to the common "100% Natural Flavors" statement (or "100% naturally flavored" statement) can be decided on a class-wide basis by Palmer's expert economist through a hedonic regression analysis ("hedonic"), and if necessary, through use of a conjoint, to determine consumer willingness-to-pay. Hamilton Decl. ¶¶ 47-76, 81; Sukumar Report, pp. 20-29, 31. *See e.g., In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 1025 (concluding that experts' hedonic and conjoint analyses together met class certification requirements in "100% Natural" labeling case); *see also Gunaratna v. Dennis Gross Cosmetology LLC*, No. CV 20-2311-MWF (GJSx), 2023 U.S. Dist. LEXIS 60796, at *64 (C.D. Cal. Apr. 4, 2023) (approving of conjoint in case involving false advertising claim concerning collagen); *Thomas v. Nestle United States*, No. BC649863, 2020 Cal. Super. LEXIS 45291, *16-19 (Los Angeles Sup. Ct. Apr. 29, 2020) (approving of conjoint in product false advertising case involving slack-fill).

Palmer is not required to have conducted the damages analysis at the class certification stage. *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. June 18, 2010) (internal quotation marks omitted). For hedonic, Dr. Hamilton can reasonably look to, for example, product marketing materials, Universal Product Code information (*see e.g.*, Exhibit 38; Ibey Decl., ¶ 16), and sales data already obtained from Coca-Cola from, e.g., [redacted] (*see* Exhibit 3, 30(b)(6) Trans. 122:16-19, 180:11-190:20, 195:19-198:21; *id.* at 139:17-141:7; Exhibit 44), including additional information that can be obtained from Coca-Cola and/or pertinent third parties such as retailers like Amazon.com and bottlers (who sell to retailers[16]) regarding sales data, and market data from Circana, Nielsen and Mintel, in making the calculations at the merits stage. Exhibit 1, Hamilton Decl., ¶¶

---

[16] Exhibit 3, 30(b)(6) Trans. 96:14-18, 96:26-97:11, 101:8-102:3, 102:8-13; *see also id.* at 97:23-98:1, 102:2-7.



KAZEROUNI LAW GROUP, APC

60-68; Exhibit 2, Sukumar Report, pp. 20-29, 31; Ibey Decl., ¶ 43 n.1; Exhibit 13 (products with an ASIN). Hedonic is Plaintiff's preferred damages methodology, since it would utilize consumer sales data, such as actual scanner data containing class member transactions. Exhibit 1, Hamilton Decl., ¶¶ 4, 46, 55-60.

Should use of a conjoint become necessary, Dr. Hamilton could, in conjunction with expert work by Dr. Sukumar, calculate class-wide damages from a consumer survey to value the alleged misrepresentations. *See id.* at ¶¶ 69-81; Exhibit 2, Sukumar Report, pp. 20-29, 31.

In the alternative, Dr. Hamilton can determine an appropriate measure of "unjust enrichment" to Defendant for monies it obtained, which it should not rightfully retain, due to the alleged product misrepresentations. Exhibit 1, Hamilton Decl., ¶¶ 77-80. To do so, Dr. Hamilton could look to sales records already obtained from Coca-Cola,[17] including additional information that may be obtained from Coca-Cola and/or pertinent third parties such as bottlers to whom Coca-Cola sells the concentrate. Exhibit 3, 30(b)(6) Trans. 45:7-18, 49:3-11, 199:25-200:19; Exhibit 1, Hamilton Decl., ¶¶ 69-80.

Consequently, important common issues of fact and law predominate, including as to class-wide damages methodologies.

## IX. PALMER'S CLAIMS ARE TYPICAL TO THOSE OF THE CLASSES

Rule 23(a)(3) requires showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The purpose of this requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hardwick v. Hoovestol, Inc.*, No. CV 20-7505-DMG (MAAx), 2022 U.S. Dist. LEXIS 183558, at *14 (C.D. Cal. Sep. 12, 2022) (internal quotation marks omitted). It "requires only that the representative's

[17] Palmer agreed to receive Defendant's May 22, 2026 Supplemental Response to RFP Nos. 71-73 in lieu of Defendant producing (*prior* to class certification) actual profit and loss statements and Cost of Goods Sold. Ibey Decl., ¶ 35; Exhibit 5.



KAZEROUNI LAW GROUP, APC

claims are reasonably co-extensive with those of absent Class members...” *Id.*

Palmer is a California resident who purchased two packs of the Class Products, i.e., one Sprite Lemon-Lime and one Fanta Orange. Palmer Decl., ¶¶ 2, 8. Palmer’s claims are based on marketing of the Class Products as “100% Natural Flavors” (or similar statement), and she was personally deceived by the misrepresentation. Palmer Decl., ¶¶ 5-10, 26, Exhibit A thereto (Palmer Trans., 25:23-25, 36:1-7, 41:3-9, 62:2-8, 71:2-9). The absent Class members are likewise persons in California who purchased one or more of the Class Products, who suffered the same harm and in virtually the same manner, in that Coca-Cola misrepresented the Class Products as being made with “100% Natural Flavors” (and/or “100% naturally flavored,” for online purchases of Fanta).

Palmer brings claims based on violations of the CLRA, breach of express warranty, intentional misrepresentation, and in the alternative, unjust enrichment, seeking the same remedy of damages (or restitution) for herself and the Classes. FAC, at ¶¶ 143-204; Palmer Decl., ¶ 4. *See e.g., In re ConAgra Foods*, 90 F. Supp. 3d at 975 (finding typicality based on “100% Natural” claim); *Allen*, 300 F.R.D. at 662-63 (finding typicality satisfied).

Thus, Palmer’s claims are virtually identical to (and typical of) the Classes.

## X. STANDING TO SUE FOR SUBSTANTIALLY SIMILAR PRODUCTS

In light of such typicality, it is also appropriate for Palmer to sue (and to have Article III standing) for substantially similar Sprite and Fanta sodas, including all size variations, because each of the Class Products contained citric acid (that is not labeled as a preservative) and the “100% Natural Flavors” statement. Permitting Palmer to represent all the Class Products makes practical sense, since the main inquiry concerning whether the “100% Natural Flavors” claim, which is part of a comprehensive marketing campaign, is false or misleading can be decided as to the similar fifteen advertised soft drinks (seven for the Sprite brand and eight for the Fanta brand) in one swoop. The legal challenge is the same and the harm to



KAZEROUNI LAW GROUP, APC

California consumers is also the same.

In addition to the cases cited by Palmer at Dkt. No. 25, pp. 15-16, courts more recently have permitted plaintiffs to sue for substantially similar products. *See e.g.*, *Vickery v. SD Bullion, Inc.*, No. 3:25-cv-1915-JES-DDL, 2026 U.S. Dist. LEXIS 10298, at *9 (S.D. Cal. Jan. 20, 2026) (involving collectible coins).

Thus, the Court should *continue* to find that Palmer has standing to sue for all of the substantially similar Class Products (*see* Dkt. No. 29, p. 21; Dkt. No. 39).

## XI. PALMER AND HER COUNSEL ARE ADEQUATE CLASS REPRESENTATIVES

Courts ask two questions to determine adequacy: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (2003).

Palmer has a reasonable (layperson) understanding of the claims and nature of this putative class action. *See* Palmer Decl., ¶¶ 4, 13-14, 21, 26, Exhibit A thereto (Palmer Trans., 25:23-26:5, 30:24-31:1, 142:5-8, 152:6-14, 154:15-22, 158:10-23). Palmer understands the duties of acting as a class representative, including the responsibility of seeing that this case is prosecuted on behalf of the class members, not just herself. *Id.* at ¶¶ 4, 16, 18-19, 25. Palmer has no known conflict of interest with the Classes (Palmer Decl., ¶ 21).

Defendant does not have any defenses unique to Palmer, especially one that could conceivably detract from the interests of representing the Class members. Defendant's affirmative defenses (at this stage) include only—common evidence—in the form of supplier letters and product labels/packaging. Exhibit 3, 30(b)(6) Trans. 34:14-24, 35:12-14, 36:3-6.

Palmer has fulfilled her obligations as a proposed representative thus far by, among other things, reviewing the pleadings, keeping in contact with her counsel, responding to discovery and producing 603 pages of documentation, and appearing



KAZEROUNI LAW GROUP, APC

for her oral deposition (Palmer Decl., ¶¶ 19-20, 26, Exhibit A thereto (Palmer Trans., 18:22-25, 22:4-5, 19:18-20, 130:15-20, 147:7-15, 154:15-22, 158:10-23); Declaration of Gil Melili ("Melili Decl."), ¶ 8). Palmer remains willing to fulfill her obligations as a class representative. Palmer Decl., ¶ 18.

Similarly, Palmer's attorneys are qualified and highly experienced in class action litigation and have an established track record litigating cases involving consumer protection and advocacy, including for product false advertising cases. *See* Ibey Decl., ¶¶ 5-16, 18-25; Declaration of Abbas Kazerounian ("Kazerounian Decl."), ¶¶ 10-22; Melili Decl., ¶¶ 12-18. Palmer's counsel have, among other things, sent the pre-suit demand letter, conducted substantial formal discovery (written and oral, including expert testimony), and communicated with third parties regarding evidence preservation and availability of sales data. Ibey Decl., ¶ 8. Palmer and her counsel have no known conflicts of interest. Ibey Decl., ¶¶ 5, 12-14; Kazerounian Decl., ¶ 9; Melili Decl., ¶ 8.

Thus, Palmer and her counsel are adequate representatives of the Classes.

## XII. THE SUPERIORITY REQUIREMENT IS SATISFIED

Certification of the two damages classes under Rule 23(b)(3) is appropriate. Palmer has already demonstrated above that common issues predominate. Thus, she only needs to satisfy the remaining requirements of Rule 23(b)(3), referred to as "superiority," which are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

### A. <u>Interests of Absent Class Members</u>

Class treatment here would increase the California Class members' access to redress by unifying what otherwise may be multiple small claims. Class members





KAZEROUNI LAW GROUP, APC

will not have to litigate numerous and substantial issues (including regarding expert testimony) to establish their right to recover individually. "Where damages suffered by each putative class member are not large, th[e first] factor weighs in favor of certifying a class action." *In re ConAgra Foods*, 90 F. Supp. 3d at 1033 (quoting *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (internal quotation marks omitted).

Given the small typical price of the Class Products (*e.g*., Palmer paid $5.98 for each of the two 10-packs, Palmer Decl., ¶ 8), even if an individual purchased Class Products on a regular basis, the damages they could recover in an individual suit would not be sufficient for them to commence an individual action. *See In re ConAgra Foods*, 90 F. Supp. 3d at 1033; *Ades v. Omni Hotels Mgmt. Corp.*, No. 2:13-cv-02468-CAS(MANx), 2014 U.S. Dist. LEXIS 129689, at *43 (C.D. Cal. Sept. 8, 2014) ("the Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and legal issues…"). The amount of money required to "marshal the type of evidence, including expert testimony, that is necessary to pursue such a claim against a well-represented corporate defendant would discourage individual class members from filing suit when the expected return is so small." *In re ConAgra Foods*, 90 F. Supp. 3d at 1033 (citing *Amchem Prods., Inc.*, 521 U.S. at 617).

**B. <u>Extent and Nature of Other Litigation</u>**

The second factor favors class certification. Palmer's attorneys are unaware of any competing similar class case against Coca-Cola (Ibey Decl., ¶ 6; Kazerounian Decl., ¶ 9; Melili Decl., ¶ 11), nor has any party submitted a notice of related cases. A single class action is preferrable to multiple separate actions. *See, e.g., Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 236-37 (C.D. Cal. 2003) ("Where common questions 'predominate,' a class action can . . . avoid inconsistent outcomes …"). If the present case were broken up into several individual cases, or if several individual cases were filed, that could create



KAZEROUNI LAW GROUP, APC

conflicting results. And, to the extent there are any individual lawsuits against Coca-Cola alleging similar violations, Coca-Cola cannot show that multiple individual suits by California consumers based on the same marketing campaign is preferable to efficiently resolving such claims through the class action mechanism of redress.

**C. Desirability of Concentrating Litigation in the Forum**

Issues pertaining to this factor have already been decided in Palmer's favor in light of the denial of Coca-Cola's motion to transfer venue. Dkt. No. 39. Further, since this is now a California-only class case based on the FAC, the Class members reside in this judicial district and throughout California, with Palmer located in Northridge, California. Palmer Decl., ¶ 2. Coca-Cola conducts business in this forum, including the marketing of the Class Products within California, which includes the packs of the Products sold to Palmer through Amazon.com (*see* FAC, ¶¶ 18, 23, 24, 134; Palmer Decl., ¶¶ 8-9), and produced data reflecting California sales of the Class Products (Exhibit 14; Exhibit 3, 30(b)(6) Trans. 139:17-141:7).

Several retailers with a presence in California sell the Class Products. *See* Ibey Decl., ¶ 43 n.1; Exhibit 12 (TCCC_0000152); Exhibit 40 (Walgreens Declaration); Exhibit 25 (PALMER000600). Notably, Palmer brings a CLRA claim—a California consumer protection statute.

Lastly, the "presentation of the evidence in one consolidated action will reduce unnecessarily duplicative litigation and promote judicial economy." *Galvan v. KDI Distrib.*, No. SACV 08-0999-JVS (ANx), 2011 U.S. Dist. LEXIS 127602, at *37 (C.D. Cal. Oct. 25, 2011). The Parties, combined, have already exchanged 5,360 pages of documentation, including a spreadsheet with over 8,500 lines of data. Ibey Decl., ¶¶ 15 and 68; Exhibit 38 (advertising copy).

**D. Manageability**

There are no known or foreseeable manageability concerns in seeking damages under the CLRA and various common law causes of action, as the proposed Classes are limited to California customers who purchased one or more



KAZEROUNI LAW GROUP, APC

of the Class Products between May 27, 2021 and May 27, 2025. While Coca-Cola may not directly sell the Class Products to California consumers, various retailers do, such as Amazon.com. *See* Exhibit 12 (TCCC_0000152). Palmer has obtained declarations from Costco and Walgreens, who do business in California, concerning the availability of sales data / customer contact information. Exhibits 40-41. Defendant has also produced some sales data from third parties. Exhibit 3, 30(b)(6) Trans. 138:9-141:25, 197:6-198:14; Exhibit 12; *see generally*, Exhibit 44. Dr. Hamilton expects to obtain additional relevant data from third parties such as national retailers as well as the companies Circana/IRI and Mintel. *See* Exhibit 1, Hamilton Decl., ¶¶ 60-68.

Rule 23(c)(2) provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The best practical notice does not require 100% reach. *Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021). Palmer proposes to provide class notice by direct email or mail based on customer records to the extent they can be obtained via subpoena to major retailers, which includes online and in-store purchases (such as in-store purchases linked to a loyalty account. *See e.g*., Exhibit 40 (Walgreens Declaration); Exhibit 41 (Costco Declaration); Exhibit B to Palmer Decl., ¶ 27. Retailers such as Amazon.com would have ready access to customer contact and sales information for online purchases (*see* Ibey Decl., ¶ 43, n.1). Supplemental notice could be provided by publication and/or ad campaign targeting California consumers in the relevant soft drink category, as recommended by a competent administrator. Notice could also be provided on Defendant's social media accounts.

Therefore, certifying this case as a class action would serve the efficient and appropriate resolution of Coca-Cola's alleged violations of California law, satisfying the superiority requirement.

\\



KAZEROUNI LAW GROUP, APC

## XIII. CONCLUSION

In sum, the Court should grant the motion for class certification pursuant to Rule 23(b)(3); appoint Palmer as the Class Representative; appoint Jason A. Ibey, Abbas Kazerounian, and Gil Melili of Kazerouni Law Group, APC, as Class Counsel; and order the Parties to meet and confer regarding giving class notice.

Dated: June 25, 2026

**KAZEROUNI LAW GROUP, APC**

By: *<u>/s/ Jason A. Ibey</u>*

Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Victoria Palmer and the proposed Classes

KAZEROUNI LAW GROUP, APC

**CERTIFICATION OF COMPLIANCE PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Victoria Palmer, certifies that this brief contains 6,964 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 25, 2026 **KAZEROUNI LAW GROUP, APC**

By: *<u>/s/ Jason A. Ibey</u>*
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*, Victoria Palmer

KAZEROUNI LAW GROUP, APC