**PATTERSON BELKNAP WEBB & TYLER LLP**
Steven A. Zalesin (*Pro Hac Vice*)
sazalesin@pbwt.com
Dakotah M. Burns (*Pro Hac Vice*)
dburns@pbwt.com@pbwt.com
Faust Petkovich (*Pro Hac Vice*)
fpetkovich@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2110
Facsimile: (212) 336-2111

**DLA PIPER LLP (US)**
Tanya L. Greene, Cal Bar No. 267975
tanya.greene@us.dlapiper.com
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067
Telephone: (310) 595-3000
Facsimile: (310) 595-3300

Attorneys for Defendant
*The Coca-Cola Company*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

VICTORIA PALMER, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

THE COCA-COLA COMPANY,

Defendant.

Case No. 2:25-cv-04777-GW-CTS

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE FROM DEFENDANT THE COCA-COLA COMPANY'S RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Hearing Date: October 1, 2026
Time: 8:30 a.m.
Judge: Hon. George H. Wu

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 7

I. THERE IS NO BASIS TO EXCLUDE THE EVIDENCE AT ISSUE ........ 8

A. The Parties' Agreement Concerned When the 100% Representation Appeared, Not Whether It Appeared on Every Label ........ 8

B. Plaintiff Has No Evidence that Coca-Cola Acted in Bad Faith ........ 9

C. Plaintiff's 'Concealment' Theory Is an Irrelevant Red Herring ........ 11

II. PLAINTIFF'S BELATED REQUEST FOR ADDITIONAL DISCOVERY SHOULD BE REJECTED ........ 13

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Unites for Kids v. Rousseau*,
985 F.3d 1075 (9th Cir. 2021) ........ 8, 9

*Cain v. Nat'l Distribution Centers, LLC*,
2025 WL 4800495 (C.D. Cal. June 13, 2025) ........ 8, 9

*C.B. v. Moreno Valley Unified Sch. Dist.*,
2023 WL 3333631 (C.D. Cal. Jan. 18, 2023) ........ 10

*Core Health & Fitness, LLC v. Powerbahn, LLC*,
2025 WL 1844222 (C.D. Cal. May 30, 2025) ........ 7, 10, 11

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........ 14

*Holak v. Kmart Corp.*,
2014 WL 2565902 (E.D. Cal. June 6, 2014) ........ 14

*In re BCB Contracting Servs., LLC*,
2022 WL 17844674 (9th Cir. Dec. 22, 2022) ........ 10

*In re In*,
2025 WL 986233 (N.D. Cal. Apr. 2, 2025) ........ 11

*Lofton v. Verizon Wireless, LLC*,
308 F.R.D. 276 (N.D. Cal. 2015) ........ 8

*Luna D'sol v. Bank of Am., N.A.*,
2026 WL 2533134 (C.D. Cal. Aug. 27, 2026) ........ 11

*Primus Auto Fin Servs. v. Batarse*,
115 F.3d 644 (9th Cir. 1997) ........ 11

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010) ........ 12

*Vinole v. Countrywide Home Loans, Inc.*,
571 F.3d 935 (9th Cir. 2009) ........ 14

# TABLE OF AUTHORITIES

**(continued)**

Page(s)

**Other Authorities**

C.D. Cal. L.R. 37 .......... 13

Defendant The Coca-Cola Company ("Coca-Cola") respectfully submits this memorandum of law in opposition to Plaintiff's Motion to Exclude Evidence from Coca-Cola's Response in Opposition to Class Certification (the "Motion"). *See* ECF No. 74-1.

## INTRODUCTION

Plaintiff asks the Court to exclude evidence of a fact that she has known to be true for more than five months. In April 2026, Coca-Cola produced 68 labels for the challenged Sprite and Fanta products (the "Class Products") that were in use between May 2021 and May 2025 (the "Class Period"). Eight of those labels did not include the "100% Natural Flavors" statement (the "100% Representation") at issue in this case. Aware of this fact, Plaintiff studiously avoided asking Coca-Cola during discovery whether the 100% Representation appeared on every label of every Class Product sold during the Class Period. As the undisputed record shows, it did not.

Nevertheless, Plaintiff asks the Court to exclude this evidence because Coca-Cola purportedly represented that it would not refer to this fact in opposing Plaintiff's motion for class certification. This argument is based on a distortion of discovery responses that had nothing to do with the evidence at issue and made no such representation.

Plaintiff's Motion rests on a series of unrelated discovery communications concerning the ***time period*** during which the 100% Representation appeared on the Class Products. Specifically, in advance of the deposition of Coca-Cola's corporate representative, Plaintiff indicated that one deposition topic would concern "***the first date***" on which the 100% Representation appeared on the Class Products' labels. Because Coca-Cola does not dispute that the 100% Representation was in use throughout the Class Period, it proposed that Plaintiff eliminate this deposition topic in exchange for Coca-Cola's agreement "not to take the position in responding to Plaintiff's motion for class certification that the labels and/or packaging for the Class

Products did not contain the 100% Natural Flavors representation during any part of the Class Period."

The wording and context of this compromise renders its meaning unmistakable: Coca-Cola affirmed that there was no ***temporal*** segment of the Class Period during which the 100% Representation did not appear on the Class Products, so questions concerning the "first date" on which it appeared were unnecessary. This is a fundamentally different question from whether the representation appeared on ***every*** label during that period. Coca-Cola's stipulation addressed only the temporal issue, not whether every label bore the representation at all times.

Plaintiff now insists that Coca-Cola's acknowledgement that the 100% Representation was used throughout the Class Period amounts to an admission that the representation appeared on every label of every Class Product sold during the Class Period. But that is not true, and it is not what Coca-Cola said. Plaintiff's attempt to rewrite the record and exclude evidence that has been in her possession for months should be rejected.

## BACKGROUND

### A. Plaintiff's Request for the "First Date" the 100% Representation Appeared on the Class Products

Plaintiff's Motion is predicated on two of Coca-Cola's discovery responses in this litigation. Notably, however, she fails to provide any background or context surrounding the negotiations that preceded those responses. That context is crucial, and it leaves no doubt that Coca-Cola's representations concerned only the time period in which the 100% Representation appeared on the Class Products' labels—not whether the statement appeared on every product label.

On April 8, 2026, Coca-Cola produced 68 labels for the Class Products, eight of which did not include the 100% Representation at issue here. *See* Declaration of Steven

A. Zalesin ("Zalesin Decl."), Ex. 1; ECF No. 69-3. Plaintiff does not dispute that Coca-Cola produced these eight labels to her, nor does she dispute that she has known since April that these labels do not bear the 100% Representation. Because Plaintiff was already aware that certain of the Class Products' labels did not include this statement, she never asked Coca-Cola in discovery whether the 100% Representation appeared on every label of the Class Products.

Plaintiff did, however, ask Coca-Cola ***when*** the 100% Representation first appeared on the Class Products. She did this in two related discovery requests. First, on February 9, 2026, Plaintiff's Request for Production ("RFP") No. 12 asked for documents "sufficient to indicate the date each of the CLASS PRODUCTS was ***first made available*** for sale in California with the representation '100% Natural Flavors[.]'" *See* Zalesin Decl., Ex. 2 at 8 (emphasis added). In later correspondence, Plaintiff explained that these "requested documents [would] help Plaintiffs determine whether there is a need for any sub-classes or to redefine the proposed time period of the Class Period." *Id.*, Ex. 3 at 16.

Second, on April 16, 2026—one week after Coca-Cola had already produced the eight labels at issue—Plaintiff served a notice of deposition for Coca-Cola's corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6). None of the 29 noticed topics concerned whether the 100% Representation appeared on every label of the Class Products. But Topic No. 2 mirrored RFP 12: it addressed "[t]he ***first date*** each of the CLASS PRODUCTS was made available for sale in California with the representation '100% Natural Flavors[.]'" *Id.* Ex. 4 at 3 (emphasis added).

At subsequent meet-and-confers that concerned Topic No. 2, Coca-Cola explained that the 100% Representation first appeared on the Class Products years prior to the beginning of the Class Period. *See* Zalesin Decl, Ex. 5 at 5. For this reason, Coca-Cola did not dispute that the 100% Representation had appeared on the Class

Products during the entirety of the Class Period. *See id.* Coca-Cola thus proposed that Plaintiff withdraw Topic No. 2 from the 30(b)(6) deposition in exchange for Coca-Cola's agreement that it would "not take the position in responding to the upcoming motion for class certification that the labels and/or packaging for the Class Products did not contain the 100% Natural Flavors representation during any part of the Class Period." ECF No. 74-3 at 4.

Coca-Cola's response included one caveat related to differences in the placement and size of the 100% Representation on certain Class Products during different parts of the Class Period. For example, at the beginning of the Class Period in 2021, the 100% Representation appeared on the front label of the Fanta products, but for the remainder of the Class Period it appeared only in fine print on Fanta's back label. *See* Zalesin Decl, Ex. 6 at 4; *see also, e.g.*, ECF No. 64-24 at 28-29 (showing Fanta Strawberry labels with 100% Representation on the front label in 2021 version, but on the back label in 2022 version). Thus, although Coca-Cola agreed that the 100% Representation had been used throughout the Class Period, it reserved "the right to point out differences in the placement or size of this claim" during different parts of that period. ECF No 74-3 at 4.

Coca-Cola likewise agreed to supplement its response to RFP 12 to state that the 100% Representation "would have appeared on" the Class Products "during the entirety of the Class Period." ECF No. 74-5. In email correspondence, Plaintiff's counsel noted that "RFP No. 12 [was] not verified (in other words, it [was] not an interrogatory response)," and therefore asked Coca-Cola to restate its position in a verified interrogatory response. ECF No. 74-3 at 2. Plaintiff had not previously served an interrogatory concerning this time-period issue, so Coca-Cola added its response as a supplement to a preexisting request—Interrogatory No. 7, which concerned "variations of" the Class Products' labeling—to facilitate prompt service of the response without

forcing Plaintiff to serve a new interrogatory. *See* Zalesin Decl, Ex. 6 at 2. As with Coca-Cola's prior email, this supplemental response stated that Coca-Cola would "not take the position" that the 100% Representation did not appear on the Class Products "during any part of the Class Period." ECF No. 74-4 at 4.

By the time Coca-Cola served its supplemental response to Interrogatory No. 7, the eight labels that do not include the 100% Representation had already been in Plaintiff's possession for two months.

**B. Plaintiff's Proposed Numerosity Stipulation**

In advance of filing her motion for class certification in June 2026, Plaintiff asked Coca-Cola if it would stipulate that the proposed class satisfied the numerosity requirement of Federal Rule of Civil Procedure 23. Coca-Cola responded by asking Plaintiff to provide her proposed definition of the putative class. ECF No. 74-6 at 2. Plaintiff proposed the following definition:

> All persons in California who purchased one or more of [the Class Products] between May 27, 2021 and May 27, 2025, that were marketed or represented as '100% Natural Flavors,' whether on the product packaging (label or outer packaging) or in online marketing materials.

*Id.* By its express terms, this definition limited the class to consumers who had bought products marketed as having "100% Natural Flavors." For this reason, Coca-Cola's assessment of Plaintiff's proposed class definition had nothing do with the eight labels that did ***not*** include the 100% Representation, as those labels were categorically irrelevant to Plaintiff's as-defined class. Coca-Cola did, however, anticipate submitting a consumer survey demonstrating that the 100% Representation did not impact consumers' purchase decisions even when they were exposed to this representation. *See* ECF No. 69-11 (describing results of consumer survey conducted by Coca-Cola's survey expert). Because a properly defined class should include only those who were actually injured by the 100% Representation, Coca-Cola responded to Plaintiff that

while it did "not intend to affirmatively contest numerosity in connection with Plaintiff's proposed class definitions," it "reserve[d] the right to argue that these class definitions [were] overbroad, and that a properly limited class (if any) would not satisfy numerosity." ECF No. 74-6 at 3. When Plaintiff then asked Coca-Cola "what phrasing of the class definitions [it would] consider to not be overbroad," Coca-Cola responded that it did not "make[] sense to debate the class definitions over email," and that it would address those definitions in its opposition brief. *Id.* at 5-6.

### C. Class Certification Briefing and Plaintiff's Motion to Exclude

Plaintiff filed her motion for class certification on June 25, 2026. ECF No. 64-1. Although she attached 32 labels for the Class Products as exhibits to her motion, she failed to cite or acknowledge any of the eight labels that did not include the 100% Representation. *See* ECF No. 64-24. Plaintiff nevertheless did not argue that the 100% Representation appeared on every label of every Class Product—presumably because she had known since April 2026 that this was not true. Instead, she parroted the representation that Coca-Cola had made in its own discovery responses—that "[t]his claim was made on the Class Products during the *entire* Class Period." ECF No. 64-1 at 10 (emphasis in original).

On August 20, 2026, Coca-Cola served its opposition to Plaintiff's motion for class certification. ECF No. 69. Consistent with its prior representation, Coca-Cola did not argue in its opposition that the 100% Representation did not appear on the Class Products during any part of the Class Period. Coca-Cola made a much narrower point: that the representation was absent from some versions of the labels of some of the Class Products. For example, the 100% Representation did not appear on the labels of some Fanta 20-ounce bottles during the Class Period, but it did appear on others. *See* ECF No. 69-3 at 4 (Fanta 20-ounce label without the 100% Representation); ECF No. 64-24 at 23 (Fanta 20-ounce label with the 100% Representation).

On August 21, Plaintiff notified Coca-Cola of its intent to file the present Motion, purportedly on the basis that Coca-Cola's reference to these eight labels "violate[d] the Parties' agreement" in the aforementioned discovery responses. *See* Zalesin Decl., Ex. 6 at 5. In subsequent Zoom and email correspondence—none of which Plaintiff addresses or acknowledges in her Motion—Coca-Cola reminded Plaintiff of the extensive history preceding the discovery responses at issue, which made clear that Coca-Cola's statements "concerned the ***time period*** during which the '100% Natural Flavors' claim appeared on the Class Products," not whether it appeared on every version of every label. *Id.* at 3-4 (emphasis in original).

At a meet-and-confer following this correspondence, Plaintiff's counsel stated that the parties had simply been "ships passing in the night" in their negotiations regarding these responses. *See id.* at 1. In her Motion, however, Plaintiff takes a very different—and entirely unsupported—position. She now insists that "Coca-Cola has acted in bad faith," and that Coca-Cola somehow "conceal[ed]" its "true intention" to reference these eight labels during the parties' discovery negotiations. ECF No. 74-1 at 3, 5, 8-9. As demonstrated above and below, the record provides no basis for these unwarranted accusations.

## ARGUMENT

Plaintiff argues that the Court should exercise its "inherent power" to impose "evidentiary sanctions" on Coca-Cola. Motion at 3-5. But the imposition of sanctions "reflects 'an extraordinary remedy, one to be exercised with extreme caution.'" *Core Health & Fitness, LLC v. Powerbahn, LLC*, 2025 WL 1844222, at *2 (C.D. Cal. May 30, 2025) (quoting *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996)); *see also Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) ("Because of their very potency, inherent powers must be exercised with restraint and discretion.") (citation omitted). Before "acting under its inherent authority to impose a

sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith." *Rousseau*, 985 F.3d at 1090. A finding of bad faith "requires ***proof*** of bad intent or improper purpose." *Id.* (emphasis added). Accordingly, "[t]he bad faith requirement sets a high threshold," and "mere recklessness, without more, does not justify sanctions under a court's inherent power." *Cain v. Nat'l Distrib. Ctrs., LLC*, 2025 WL 4800495, at *3 (C.D. Cal. June 13, 2025) (citation omitted).

Because the district courts' "inherent powers are so potent," this Circuit "require[s] that when a court imposes sanctions based on bad faith, [it] must make an explicit finding that the sanctioned party's conduct constituted or was tantamount to bad faith." *Rousseau*, 985 F.3d at 1090 (internal quotation marks and citation omitted). "It is the moving party's burden to demonstrate that the party against whom it seeks sanctions acted with the requisite bad faith or improper purpose." *Lofton v. Verizon Wireless, LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015). Plaintiff's Motion does not come close to satisfying this heavy burden.

## I. THERE IS NO BASIS TO EXCLUDE THE EVIDENCE AT ISSUE

### A. The Parties' Agreement Concerned When the 100% Representation Appeared, Not Whether It Appeared on Every Label

Plaintiff has not only failed to demonstrate that Coca-Cola acted in bad faith—she has failed to show that Coca-Cola made any misrepresentation at all. As outlined above, the negotiations preceding Coca-Cola's responses to RFP 12 and 30(b)(6) Topic No. 2 leave no doubt that the purpose of the parties' agreement was solely to clarify the time period during which the 100% Representation appeared on the Class Products' labels. In exchange for Plaintiff's agreement to withdraw discovery requests related to the "first date" on which the 100% Representation appeared, Coca-Cola agreed not to take the position in its opposition to class certification that this representation had not

appeared on the Class Products "during any part of the Class Period." *See supra* at 4-5.

The arguments in Coca-Cola's opposition to class certification are entirely consistent with the parties' agreement. Coca-Cola did not dispute in its opposition that the 100% Representation appeared on the Class Products throughout the entirety of the Class Period. Nor did Coca-Cola argue that this representation was absent from the Class Products during any discrete portion of the Class Period. Rather, it argued only that "[e]ight of the 68 Class Product labels produced" did not include this representation. ECF No. 69 at 3. Plaintiff thus cannot show that Coca-Cola made any misrepresentation—much less that its conduct meets the "high threshold" necessary to "justify sanctions under a court's inherent power." *Cain*, 2025 WL 4800495, at *3.

**B. Plaintiff Has No Evidence that Coca-Cola Acted in Bad Faith**

Even if there were some reasonable uncertainty as to the meaning of the discovery representations at issue (there is not), that would not justify the evidentiary sanctions that Plaintiff seeks here. Plaintiff's burden is not merely to show that she reasonably interpreted Coca-Cola's responses in the manner she proposes; instead, Plaintiff must submit "proof" that Coca-Cola acted with "bad intent or improper purpose." *Rousseau*, 985 F.3d at 1090.

Plaintiff does not and cannot offer any such proof. At most, Plaintiff's Motion establishes a disagreement about the meaning of the parties' discovery communications. Indeed, Plaintiff's own counsel indicated at a meet-and-confer that the parties appeared to have been "ships passing in the night" in their interpretations of these statements. *See* Zalesin Decl., Ex. 6 at 1. Even if that were true, it would not begin to establish the "subjective bad faith" necessary to warrant the "extraordinary remedy" of imposing evidentiary sanctions. *Core Health*, 2025 WL 1844222, at *2.

Moreover, any claim of misunderstanding rings hollow given that Plaintiff has had the 68 Class Product labels in her possession since April 2026. If Plaintiff had any genuine uncertainty as to whether Coca-Cola's representations addressed the content of individual labels, she could have simply reviewed the labels that Coca-Cola had already produced—which plainly showed that eight of them did not include the 100% Representation—or posed a single clarifying question during the months of discovery that followed. Plaintiff did neither. Her claimed confusion thus cannot establish bad faith on Coca-Cola's part.

The authorities cited by Plaintiff, *see* Motion at 4-5, only reinforce this point. Both concern proven and egregious misconduct that bears no resemblance to the discovery negotiations at issue here. In *Stanley v. Mason*, the record was "replete with [counsel's] attempts to hamper enforcement of court orders and his willful abuse of judicial processes," including "encourag[ing] his client to file for bankruptcy to avoid compliance with state court subpoenas[.]" *In re BCB Contracting Servs., LLC*, 2022 WL 17844674, at *1 (9th Cir. Dec. 22, 2022). And in *C.B. v. Moreno Valley Unified Sch. Dist.*, the defendant had "exhibited extreme bad faith" after "first obtain[ing] three extensions of time to respond to the RFPs at issue, only to then serve nothing but boilerplate objections," and subsequently missing several "promised production dates," while still failing to produce all of the requisite documents even after the motion for sanctions had been filed. 2023 WL 3333631, at *6 (C.D. Cal. Jan. 18, 2023).

By contrast here, Plaintiff has at most established that she understood Coca-Cola's discovery representations differently than Coca-Cola intended them—despite having the eight labels in her possession. That is a far cry from the "extreme bad faith" and "willful abuse of judicial processes" that courts have required before imposing evidentiary sanctions. Where, as here, the moving party submits no proof to support an "explicit finding" of bad faith, courts have routinely denied requests for sanctions. *See,*

*e.g.*, *Luna D'sol v. Bank of Am., N.A.*, 2026 WL 2533134, at *4 (C.D. Cal. Aug. 27, 2026) (denying motion for sanctions despite "evidentiary objections and procedural deficiencies" because "the Court finds no conduct by Defendants' counsel that is tantamount to bad faith"); *In re In*, 2025 WL 986233, at *5 (N.D. Cal. Apr. 2, 2025) (where "[defendant's] actions were due to mistake, not deliberate choice or bad faith," they did "not meet the standard for inherent power sanctions"); *Primus Auto Fin Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (even "outrageous" and "inexcusable" conduct was not sanctionable absent proof of "bad faith"); *Core*, 2025 WL 1844222, at *2 (denying motion for sanctions and emphasizing that courts should exercise "extreme caution" in considering such requests). This Court should do the same.

### C. Plaintiff's 'Concealment' Theory Is an Irrelevant Red Herring

Recognizing that she has no proof Coca-Cola acted in bad faith, Plaintiff attempts to manufacture such evidence by baselessly claiming that Coca-Cola "conceal[ed]" its "true intention" to rely on these eight labels during negotiations regarding Plaintiff's request that Coca-Cola stipulate to the numerosity of her as-defined class. Motion at 3, 7. As explained above, before Plaintiff filed her motion for class certification, Coca-Cola informed her that it did "not intend to affirmatively contest numerosity in connection with Plaintiff's proposed class definitions," but "reserve[d] the right to argue that these class definitions [were] overbroad, and that a properly limited class (if any) would not satisfy numerosity." *Supra* at 5-6. In response to Plaintiff's follow-up questions, Coca-Cola declined to "debate" this topic further over email and indicated that it would address the issue in its opposition brief. *Id.* at 5-6.

In her Motion, Plaintiff declares that Coca-Cola "refused" to engage further about Plaintiff's proposed numerosity stipulation "because it wished to hide the basis for its overbreadth argument," which she believes had something to do with the "eight product labels" in dispute. Motion at 7. This argument fails for at least two reasons.

First, Plaintiff's proposed class definition included only consumers who bought products "that were marketed or represented as [having] '100% Natural Flavors[.]'" ECF No. 74-6 at 2; *see also supra* at 5. By its express terms, this definition included only consumers who were exposed to marketing that included the 100% Representation—which would necessarily exclude the eight labels at issue here. Thus, Coca-Cola's objection to Plaintiff's proposed class definition could not possibly have concerned these eight labels because they were ***already*** irrelevant under Plaintiff's proposed definition.

Second, as Plaintiff is well aware, numerosity is presumptively "satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Needless to say, Coca-Cola never argued—and could not rationally argue—that Plaintiff's proposed class has fewer than 40 members simply because eight of the 68 Class Products' labels did not include the 100% Representatiton. Instead, Coca-Cola cited these labels as one piece of evidence—among many others—to establish that "common issues of fact do not predominate" because the putative class members stand in "different positions vis-à-vis how and whether they were exposed to" the 100% Representation. *See* ECF No. 69 at 18 (citing *Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1117 (Cal. Ct. App. 2020)). That is the sole reason for which Coca-Cola cited these eight labels—and it has nothing to do with whether Plaintiff's proposed class had 40 or more members. Plaintiff's attempt to cast this irrelevant discovery negotiation as proof of Coca-Cola's "bad faith" should be rejected out of hand.

## II. PLAINTIFF'S BELATED REQUEST FOR ADDITIONAL DISCOVERY SHOULD BE REJECTED

Plaintiff's Motion also tacks on a request that the Court "alternatively" grant her "leave to conduct a further Rule 30(b)(6) deposition of Defendant, paid for by Defendant, to address Defendant's arguments and documentation as to the eight product labels[.]" Motion at 9. She does not offer any additional argument in support of this

request, nor does she identify any statue, rule or other authority that would authorize such a deposition. To the extent that Plaintiff makes this demand pursuant to the Court's "inherent authority" to impose evidentiary sanctions, her request should be rejected for the same reasons set forth above. To the extent that Plaintiff is seeking discovery-related relief, her request violates L.R. 37, which requires that "any motion relating to discovery under F.Rs.Civ.P. 26-37" must be raised through a joint "written stipulation," rather than a noticed motion. C.D. Cal. L.R. 37-1, 37-2.

Regardless, there is no basis for Plaintiff's request. As a threshold matter, Plaintiff's motion for class certification should be denied for numerous reasons that have nothing to do with the eight labels at issue here. *See* ECF No. 69 at 10-22 (explaining that class certification should be denied because Plaintiff is an atypical and inadequate class representative, myriad individualized questions of law and fact predominate, and Plaintiff has failed to propose a viable class-wide damages model). Because the class should not be certified regardless of whether the Court considers the eight labels in dispute, requiring an additional 30(b)(6) deposition on this topic would be wasteful and unnecessary.

Just as importantly, if Plaintiff had any questions about Coca-Cola's "documentation as to the eight product labels" (Motion at 9), she had the opportunity—and the obligation—to ask those questions in discovery before she sought class certification. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011) ("Parties seeking class certification bear the burden of demonstrating that they have met each of" Rule 23's requirements). Indeed, Plaintiff does not dispute that she has been aware of these eight labels since April 8, 2026—almost two months before she deposed Coca-Cola's 30(b)(6) witness and three months before she filed her motion for class certification. *See* Zalesin Decl., Ex. 1. Yet she never served a single discovery request concerning those labels or asked the 30(b)(6) witness a single question about them over

the course of an almost seven-hour deposition. Nor did she question why Coca-Cola would have conceded away such an obvious and consequential fact. Instead, Plaintiff solicited an agreement from Coca-Cola based upon an unrelated discovery issue and now seeks to capitalize on an expansive and unreasonable interpretation of that language after having tactically remained silent for months, until now. Plaintiff cannot attempt to salvage her failure to seek this discovery by forcing Coca-Cola to submit to an untimely second deposition. *See, e.g.*, *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 943 (9th Cir. 2009) (affirming district court's denial of additional class certification discovery where plaintiff already had "adequate time in which to complete discovery" and "made a strategic choice to limit the amount of evidence it presented to the district court"); *Holak v. Kmart Corp.*, 2014 WL 2565902, at *10 (E.D. Cal. June 6, 2014) (same where plaintiff was aware of evidence for months and "only sought relief" after defendant "used the evidence" in its class certification opposition).

## CONCLUSION

Plaintiff's Motion should be denied.

Dated: September 10, 2026

Respectfully submitted,

By: */s/ Steven A. Zalesin*
Steven A. Zalesin

PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (*Pro Hac Vice*)
sazalesin@pbwt.com
Dakotah M. Burns (*Pro Hac Vice*)
dburns@pbwt.com
Faust Petkovich (*Pro Hac Vice*)
fpetkovich@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2110
Facsimile: (212) 336-2111

DLA PIPER LLP (US)
Tanya L. Greene, Cal Bar No. 267975
tanya.greene@us.dlapiper.com
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067
Telephone: (310) 595-3000
Facsimile: (310) 595-3300

*Attorneys for Defendant*
*The Coca-Cola Company*

## CERTIFICATE OF COMPLIANCE

The undersigned Counsel of record for Defendant certifies that this brief contains 4,308 words, which complies with the 7,000 word limit of L.R. 11-6.1.

DATED: September 10, 2026

*/s/ Steven A. Zalesin*
PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (*Pro Hac Vice*)
Dakotah Burns (*Pro Hac Vice*)
Faust Petkovich (*Pro Hac Vice*)

DLA PIPER LLP (US)
Tanya L. Greene, Cal Bar No. 267975

*Attorneys for Defendant*
*The Coca-Cola Company*