**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Gil Melili, Esq. (SBN: 337116)
gil@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel On Signature Page]

*Attorneys for Plaintiff,*
*Victoria Palmer and the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **VICTORIA PALMER, SUE KIM, and, IVAN ZERMENO, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE COCA-COLA COMPANY,**<br><br>**Defendant.** | **Case No.: 2:25-cv-04777-GW-CTS**<br><br>**REPLY TO MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23 [REDACTED]**<br><br>**Date:** October 1, 2026<br>**Time:** 8:30 a.m.<br>**Courtroom:** 9D<br><br>**HON. GEORGE H. WU**<br><br>**Complaint Filed:** May 27, 2025<br>**FAC Filed:** March 12, 2026 |



KAZEROUNI LAW GROUP, APC

## Table of Contents


**I. RULE 23 REQUIREMENTS NOT CHALLENGED BY DEFENDANT** ..... 1

**II. THE CLASS DEFINITIONS ARE NOT OVERLY BROAD** ..... 1

**III. PLAINTIFF IS AN ADEQUATE CLASS REPRESENTATIVE** ..... 2

**IV. DEFENDANT MOUNTS NO CREDIBLE CHALLENGE TO TYPICALITY** ..... 4

**V. DEFENDANT'S CHALLENGE TO THE COMMONALITY PREREQUISITE IS UNFOUNDED** ..... 6

**VI. DEFENDANT DOES NOT SHOW THAT ANY INDIVIDUAL ISSUES PREDOMINATE OVER THE MANY COMMON ISSUES** ..... 7

**A. Defendant's Longstanding and Widespread Marketing Practices** ..... 7

**1.** ***The massive "100% Natural Flavors" marketing campaign*** ..... 7

**2.** ***Dr. Ugone's opinions on marketing materials are unfounded*** ..... 8

**B. The Meaning of "100% Natural Flavors" is Not Subject to Individualized Inquiry** ..... 10

**1.** ***No requirement to show a uniform understanding of the challenged marketing claim*** ..... 10

**2.** ***Sufficient and objective evidence to support materiality*** ..... 10

**3.** ***The cases relied upon by Defendant are distinguishable*** ..... 13

**4.** ***Mr. Poret's survey does not actually measure materiality*** ..... 15

**5.** ***Defendant's criticisms of Dr. Sukumar's conducted surveys go to weight or are otherwise unfounded*** ..... 15

**C. No Reliance Required for the Breach of Express Warranty Claim** ..... 16

**D. Defendant Does Not Offer Any Credible Challenge to Plaintiff's Proposed Class-Wide Damages Methodologies** ..... 17

**1.** ***Additional information is needed to conduct the proposed***




KAZEROUNI LAW GROUP, APC

***damages analysis at the merits stage*** ........ 17

**2.** ***The proposed regression model is sound*** ........ 19

**3.** ***The alternatively proposed conjoint approach is sound*** ........ 19

**4.** ***Defendant's line pricing contention is no obstacle to class certification*** ........ 20

**5.** ***Measuring unjust gains to Defendant*** ........ 22

**6.** ***Mischaracterization of Plaintiff's theory of damages*** ........ 23

**VII. CONCLUSION** ........ 23

KAZEROUNI LAW GROUP, APC

# Table of Authorities

CASES

*Algarin v. Maybelline, Ltd. Liab. Co.*,
300 F.R.D. 444 (S.D. Cal. 2014) .......... 13

*Allen v. Similasan Corp.*,
306 F.R.D. 635 (S.D. Cal. 2015) .......... 3

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......... 10

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) .......... 6

*Bazarganfard v. Club 360 LLC*,
344 F.R.D. 411 (C.D. Cal. 2023) .......... 14

*Bechtel v. Fitness Equip. Servs.*,
339 F.R.D. 462 (S.D. Ohio 2021) .......... 20

*Benedict v. Hewlett-Packard Co.*,
314 F.R.D. 457 (N.D. Cal. 2016) .......... 6

*Cabrera v. Bayer Healthcare LLC*,
No. LA CV17-08525 JAK (JPRx),
2024 U.S. Dist. LEXIS 31709 (C.D. Cal. Feb. 23, 2024) .......... 6

*Carter v. Anderson Merchandisers, LP*,
No. EDCV 08-25-VAP (OPx),
2008 U.S. Dist. LEXIS 102952 (C.D. Cal. Nov. 18, 2008) .......... 1

*Colgan v. Leatherman Tool Grp., Inc.*,
135 Cal. App. 4th 663 (2006) .......... 12

*Corral v. Staples the Office Super Store LLC*,
No. 2:22-cv-01254-MCS-PVC,
2023 U.S. Dist. LEXIS 37881 (C.D. Cal. Feb. 6, 2023) .......... 4

KAZEROUNI LAW GROUP, APC

*Downey v. Pub. Storage, Inc.*,
44 Cal. App. 5th 1103 (2020) .......... 14
*Ehret v. Uber Techs., Inc.*,
148 F. Supp. 3d 884 (N.D. Cal. 2015) .......... 7
*Faucett v. Move, Inc.*,
No. 2:22-cv-04948-ODW (ASx),
2025 U.S. Dist. LEXIS 265550 (C.D. Cal. Dec. 23, 2025) .......... 6
*Fitzhenry-Russell v. Dr. Pepper Snapple Grp. Inc.*,
326 F.R.D. 592 (N.D. Cal. 2018) .......... 16
*Gold v. Lumber Liquidators, Inc.*,
323 F.R.D. 280 (N.D. Cal. 2017) .......... 18
*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) .......... 8, 10, 12, 13
*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .......... 6
*Heckman v. Live Nation Ent., Inc.*,
No. 22-CV-00047-GW-KESx,
2025 U.S. Dist. LEXIS 269121 (C.D. Cal. Dec. 12, 2025) .......... 18
*Hirsch v. Bank of Am.*,
107 Cal. App. 4th 708 (2003) .......... 22
*Hudock v. LG Elecs. U.S.A., Inc.*,
No. 16-1220 (JRT/KMM),
2020 U.S. Dist. LEXIS 144781 (D. Minn. Aug. 12, 2020) .......... 19
*Huu Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) .......... 17
*In re Clorox Consumer Litig.*,
301 F.R.D. 436 (N.D. Cal. 2014) .......... 14

KAZEROUNI LAW GROUP, APC

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) ........................................ 16, 20
*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
285 F.R.D. 573 (E.D. Cal. 2012) ........................................ 13
*Jones v. ConAgra Foods, Inc.*,
No. C 12-01633 CRB,
2014 WL 2702726 (N.D. Cal. June 13, 2014) ........................................ 12
*Jovel v. Boiron, Inc.*,
No. 11-cv-10803-SVW-SHx,
2014 U.S. Dist. LEXIS 35908 (C.D. Cal. Feb. 27, 2014) ........................................ 4
*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ........................................ 17
*Lara v. First Nat'l Ins. Co. of Am.*,
25 F.4th 1134 (9th Cir. 2022) ........................................ 14
*Lytle v. Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024) ........................................ 17
*Martin v. Monsanto Co.*,
No. ED CV 16-2168-JFW (SPx),
2017 U.S. Dist. LEXIS 135351 (C.D. Cal. Mar. 24, 2017) ........................................ 17, 19
*Martinez v. TransUnion Rental Screening Solutions, Inc.*,
No. CV 23-10678-GW-ASx,
2025 U.S. Dist. LEXIS 32827 (C.D. Cal. Feb. 24, 2025) ........................................ 6
*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ........................................ 7
*McCurley v. Royal Seas Cruises, Inc.*,
331 F.R.D. 142 (S.D. Cal. 2019) ........................................ 2
*McKenzie v. Fed. Express Corp.*,
275 F.R.D. 290 (C.D. Cal. 2011) ........................................ 22



KAZEROUNI LAW GROUP, APC

*Mier v. CVS Health*,
No. 22-55665,
2023 U.S. App. LEXIS 19472 (9th Cir. July 28, 2023) ....................................22
*Miley v. Belkin Int'l, Inc*.,
No. 20STCV00033,
2024 Cal. Super. LEXIS 10714 (Los Angeles Cnty. Sup. Ct. Apr. 16, 2024) ....17
*Moorer v. StemGenex Med. Grp., Inc.*,
830 F. App'x 218 (9th Cir. 2020) ..............................................................14, 15
*Morales v. Kraft Foods Grp., Inc*.,
No. LA CV14-04387 JAK (PJWx),
2017 WL 2598556 (C.D. Cal. June 9, 2017)....................................................20
*Noohi v. Johnson & Johnson Consumer Inc*.,
146 F.4th 854 (9th Cir. 2025)...................................................................11, 17
*Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022)........................................................................2, 7
*Orshan v. Apple Inc*.,
No. 5:14-cv-05659-EJD,
2024 U.S. Dist. LEXIS 177689 (N.D. Cal. Sept. 30, 2024).........................18, 23
*Pelayo v. Nestle USA, Inc*.,
989 F. Supp. 2d 973 (C.D. Cal. 2013)..............................................................12
*Ries v. Ariz. Bevs. USA LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) ......................................................................5
*Rusoff v. Happy Grp., Inc*.,
No. 24-7706,
2026 U.S. App. LEXIS 24726 (9th Cir. Aug. 17, 2026) ....................................13
*Schramm v. JPMorgan Chase Bank, N.A.*,
No. LA CV09-09442 JAK (FFMx),
2011 U.S. Dist. LEXIS 122440 (C.D. Cal. Oct. 19, 2011) ..............................1, 2



KAZEROUNI LAW GROUP, APC

*Sevidal v. Target Corp.*,
189 Cal. App. 4th 905 (2010)....13
*Tortilla Factory, LLC v. Gt's Living Foods, Inc.*,
No. CV 17-7539 FMO (GJSx),
2022 U.S. Dist. LEXIS 141049 (C.D. Cal. June 9, 2022)....10
*True Health Chiropractic, Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018)....1
*Tunick v. Takara Sake USA Inc.*,
806 F. Supp. 3d 912 (N.D. Cal. 2025)....15
*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016)....7
*Wallenstein v. Mondelez Int'l, Inc.*,
No. 22-CV-06033-VC,
2024 U.S. Dist. LEXIS 173860 (N.D. Cal. Sept. 25, 2024)....11, 12, 19
*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....6
*Weiner v. Snapple Bev. Corp.*,
No. 07-CV-8742 (DLC),
2010 U.S. Dist. LEXIS 79647 (S.D.N.Y. Aug. 3, 2010)....22
*Welling v. Alexy (In re Cirrus Logic Sec.)*,
155 F.R.D. 654 (N.D. Cal. 1994)....4
*Wendt v. Host Int'l, Inc.*,
125 F.3d 806 (9th Cir. 1997)....16
*Whitaker v. Pharmavite LLC*,
No. CV 22-04732-DMG (MARx),
2023 U.S. Dist. LEXIS 84102 (C.D. Cal. May 9, 2023)....13
*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010)....10

KAZEROUNI LAW GROUP, APC

RULES

Fed. R. Civ. P. 23 ........ 1, 10, 11, 18

Fed. R. Civ. P. 30 ........ 21

Fed. R. Evid. 702 ........ 9

TREATISES

Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. d (Am. L. Inst. 2011) ........ 22

REGULATIONS

21 C.F.R. § 101.22(a)(3) ........ 12

KAZEROUNI LAW GROUP, APC

The few class certification requirements challenged by Defendant ("Opposition," Dkt. No. 69) provide no basis to deny class certification or limit the scope of the classes. Therefore, the Court should grant the motion.

## I. RULE 23 REQUIREMENTS NOT CHALLENGED BY DEFENDANT

Defendant does not challenge numerosity or adequacy of proposed class counsel under Rule 23(a), or superiority under Rule 23(b)(3). Therefore, Defendant impliedly concedes these requirements are met. *See e.g.*, *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-25-VAP (OPx), 2008 U.S. Dist. LEXIS 102952, at *18 (C.D. Cal. Nov. 18, 2008) ("Defendant does not argue that numerosity does not exist here, and hence concedes Plaintiff has established this criterion.").

## II. THE CLASS DEFINITIONS ARE NOT OVERLY BROAD

Defendant implies the class definitions are overly broad, relying on evidence that violates its promise to not oppose class certification on the grounds that the labels of the Class Products did not say "100% Natural Flavors" during any part of the Class Period. Dkt. No. 74-1, 1:5-2:7; Reply Declaration of Jason A. Ibey ("Ibey Reply Decl."), Exhibit 11 (Suppl. Response to ROG No. 7, June 5, 2026); Exhibit 12 (Suppl. Response to RFP No. 13, May 22, 2026).[1] Defendant also unfairly surprised Plaintiff with its overbreadth argument. Dkt. No. 47-1, 2:8-18.

No evidence is offered by Defendant that documents of eight product labels (for a few products) without the challenged claim (Dkt. No. 69-3) were in circulation in California during the Class Period as opposed to being drafts, or that they were used for any substantial length of time, which cannot support an assertion of individualized issues. Speculation cannot defeat class certification. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) ("[Courts] do not consider . . . defenses [to class certification] that [a defendant] might advance or for which it has presented no evidence."); *Schramm v. JPMorgan Chase Bank,*

[1] Numbered Exhibits are to the Ibey Reply Declaration.



KAZEROUNI LAW GROUP, APC

*N.A.*, No. LA 09-CV-09442-JAK (FFM), 2011 U.S. Dist. LEXIS 122440, at *31 (C.D. Cal. Oct. 19, 2011).

One of those labels for a Fanta Orange 12 oz. can says, "DO NOT USE FOR PRODUCTION." Dkt. No. 69-3, Page ID 2441. The Fanta Orange 12 oz. bottle pack of 4 *without* the challenged claim (Dkt. No. 69-3, Page ID 2442) has a production date one day before a different label for the same product (i.e., same Universal Product Code) which *does* have the challenged claim. Ibey Reply Decl., ¶¶ 14-15, Exhibits 5 and 6. The Sprite Chill Strawberry Kiwi label with a production date in [redacted] is irrelevant. Ibey Reply Decl., ¶ 16, Exhibit 7; Dkt. No. 69-3, Page ID 2445. Even a class definition which may be slightly overinclusive is no obstacle to class certification. *See Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (en banc).

Lastly, if necessary, Plaintiff could and is willing to modify the class definitions' exclusionary language to say: "Excluded from the Classes are (i) Fanta Grape 20 oz. bottle in a 6-pack; (ii) Fanta Pina Colada single 20 oz. bottle; (iii) Fanta Orange single 12 oz. can (iv) Fanta Orange single 20 oz. bottle; (v) Fanta Orange 12 oz. bottle in a 4-pack; (vi) Sprite Chill Strawberry Kiwi single 12 oz. can; (vii) Sprite Chill Strawberry Kiwi single 20 oz. bottle; (viii) fountain drinks; (ix) Defendant's officers, directors, and employees; and (x) and persons who purchased the Class Products for resale." *See McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 162 (S.D. Cal. 2019) ("A plaintiff may properly narrow the class for which it seeks class certification even in a reply brief.").

## III. PLAINTIFF IS AN ADEQUATE CLASS REPRESENTATIVE

Defendant's arguments challenging Plaintiff's adequacy are each without merit. Plaintiff categorically disputes Defendant's unfounded assertion that her claim is manufactured. It was only after Plaintiff independently purchased the soda beverages for use at a family gathering that she learned of the misrepresentation. *See* Dkt. No. 69-2, Palmer Trans., 52:19-53:3, 70:23-71:10. It is unremarkable that

KAZEROUNI LAW GROUP, APC

Plaintiff's son knows an attorney at Plaintiff's counsel's office who provided prior legal assistance. *See* Reply Declaration of Gil Melili ("Melili Reply Decl."), ¶ 9, Exhibit B (Matt Palmer Trans., 13:5-15:25, 26:14-27:9). Defendant does not contend there is any conflict of interest.

Plaintiff's review of the First Amended Complaint ("FAC," Dkt. No. 52) did not need to take long, as it dropped the nationwide class, removed causes of action dismissed by the Court, and added claims of two *other* named plaintiffs. *See* Melili Reply Decl., ¶ 7, Exhibit A (showing redlines). It did not change the main substance of Ms. Palmer's personal and putative class claims. Plaintiff sufficiently reviewed the initial Complaint and even suggested edits. *See* Reply Declaration of Victoria Palmer ("Palmer Reply Decl."), ¶¶ 3-5; Melili Reply Decl., ¶ 7.

Coca-Cola misstates Plaintiff's testimony when it says she "skimmed" her discovery responses. Opposition, p. 1:15-19. *See* Dkt. No. 69-2 (Palmer Trans., 130:15-133:23, clarifying that she did review her interrogatory responses).

Ms. Palmer is actively involved in this litigation. Dkt. No. 64-2. In addition to staying in contact with her attorneys and reviewing the pleadings, she went through a "long and arduous" process of locating and producing many documents (*see, e.g.*, Dkt. No. 69-2, Palmer Trans., 147:4-15), and she appeared for deposition. *See* Palmer Reply Decl., ¶¶ 6-7; Melili Reply Decl., ¶ 8.

Defendant improperly treats the nearly five-hour in-person deposition of Plaintiff (Melili Reply Decl., ¶ 8) as a memory test. *See generally, Allen v. Similasan Corp.*, 306 F.R.D. 635, 646-47 (S.D. Cal. 2015) (finding adequacy despite inability to recall certain facts). It was also unreasonable for Defendant to ask Plaintiff questions that should be directed to an expert. *See e.g.,* Dkt. No. 69-2 (Palmer Trans., 76:3-4; 76:16-19; 84:5-6; 109:12-25).

Plaintiff's imperfect recollection of the challenged ingredients apart from citric acid does not mean other ingredients are irrelevant. There has been no judicial admission that only citric acid is a challenged ingredient.

KAZEROUNI LAW GROUP, APC

Coca-Cola's cases are distinguishable. In *Jovel v. Boiron, Inc.*, there was a concern whether the plaintiff read the label before purchase (*id.* at *10-11), and about inconsistent testimony (*id.* at *11, 14). Here, there is no such concern.[2] In *Welling*, the plaintiff appeared to "have ceded control to his lawyers," performing no further investigation and being unaware of an amended complaint. 155 F.R.D. 654, 659 (N.D. Cal. 1994) (internal quotation marks omitted). In *Corral v. Staples the Office Super Store LLC*, 2023 U.S. Dist. LEXIS 37881, at *21-22 (C.D. Cal. Feb. 6, 2023), the plaintiff demonstrated a "total lack of understanding as to the claims" and inconsistencies in testimony were significant. Here, Ms. Palmer demonstrates a basic understanding of her case[3]; Coca-Cola has not identified any significant inconsistent testimony; and there is no indication Ms. Palmer is incapable of monitoring proposed Class Counsel.

Therefore, Ms. Palmer is an adequate class representative

## IV. DEFENDANT MOUNTS NO CREDIBLE CHALLENGE TO TYPICALITY

Defendant's challenges to "typicality" should be rejected. Plaintiff relied on the "100% Natural Flavors" claim when she purchased two of the Class Products in April of 2025 (*see* Dkt. No. 69-2, Palmer Trans., 35:22-36:7; 68:23-25). She was "miffed" when she found out the representation about natural flavors is false. *See id.* at 25:24-25, 35:22-36:7, 55:16-19, 71:2-9.

Plaintiff's purchase of the Sprite Winter Spiced Cranberry beverage on December 15, 2025, falls well <u>outside</u> of the proposed Class Period ending May 27, 2025 (Dkt. No. 69-2, Palmer Trans., at 105:8-11), and the Court had already held that Plaintiff is now aware of the nature of the citric acid in Defendant's products. *See* Dkt. No. 29, pp. 22-23 (October 8, 2025, tentative ruling); *see also* Dkt. No. 39,

---

[2] Dkt. No. 69-2, Palmer Trans., 35:22-36:4; 68:23-25; 70:17-71:9.

[3] *Id.* at 25:24-26:5, 30:24-31:1, 62:17-19, 154:20-22.



KAZEROUNI LAW GROUP, APC

p. 4 (December 5, 2025, minute order). Relatedly, Coca-Cola misstates Plaintiff's testimony in contending that she was willing to pay full price even though "she believed [it] contained artificial flavors." Opposition, p. 11:8-9. Plaintiff did not recall "seeing any representation about natural flavors" for that product in December of 2025. *See* Dkt. No. 69-2, Palmer Trans., 155:22-156:3.

Defendant mischaracterizes Plaintiff's testimony regarding citric acid. While Plaintiff normally "wouldn't care" if a product contains citric acid, it does matter to her what is in a product when making a purchase that others may consume. *See id.* at 110:8-22. Plaintiff "cared about natural flavors because she thought [her grandnieces and grandnephews'] mother would approve of beverages with . . . no artificial flavors." Opposition, p. 6 (internal quotation marks omitted). Regardless, any differences in individual motivations between a plaintiff and the class does not defeat typicality. *See Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537-40 (N.D. Cal. 2012) (questioned on other grounds).

The only affirmative defense evidence offered by Defendant—which is subject to common proof and therefore supports the predominance requirement—relates to supplier letters and product labels (Dkt. No. 64-1 p. 18:21-25), none of which create any unique circumstance for Ms. Palmer that could risk distracting her to the detriment of the classes. Defendant's contention is based in part on its questions at deposition asking Ms. Palmer to speculate. *See e.g.*, Dkt. No. 69-2, Palmer Trans., 44:7-45:19.

Plaintiff's deposition testimony regarding whether citric acid is a core flavor versus an ingredient that enhances flavor says nothing about whether her pled *claims* are typical of the absent class, which requires expert opinion. Instead, such line of questioning to a layperson was clearly intended to try and extract testimony which should be directed to a scientist. Defendant has stipulated with Plaintiff that such inquiry (i.e., the flavoring function of the ingredients) is not relevant at this stage. *See* Dkt. 64-1 p. 9:21-24. Thus, typicality is met here where the claims of



KAZEROUNI LAW GROUP, APC

each class member arise from the same "course of conduct" (*Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. Cal. 2001)), and Coca-Cola's liability turns on a "similar legal argument[]" (*id.* at 868).

Defendant's cases are distinguishable. In *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992), the plaintiff had a unique relationship with counsel and substantial prior securities litigation experience. In *Benedict v. Hewlett-Packard Co.*, 314 F.R.D. 457, 470-71 (N.D. Cal. 2016), the plaintiff received money for waiving the right to bring a class action. In *Martinez v. TransUnion Rental Screening Solutions, Inc.*, 2025 U.S. Dist. LEXIS 32827, at *11 (C.D. Cal. Feb. 24, 2025), the allegedly inaccurate information did not cause harm to the plaintiff, and the facts did not match the proposed class. In *Cabrera v. Bayer Healthcare LLC*, 2024 U.S. Dist. LEXIS 31709, at *12-15 (C.D. Cal. Feb. 23, 2024), the plaintiff repeatedly purchased another similar product suffering from the same alleged problem and had no expectation as to what the product should contain. Lastly, *Faucett v. Move, Inc.*, 2025 U.S. Dist. LEXIS 265550, at *18-23 (C.D. Cal. Dec. 23, 2025), is an irrelevant TCPA case involving repeated instances of consent.

## V. DEFENDANT'S CHALLENGE TO THE COMMONALITY PREREQUISITE IS UNFOUNDED

Defendant does nothing more than handwave in challenging "commonality." Defendant already admitted the factual basis for some of the common questions (Dkt. No. 64-1 pp. 9:16-20; 10:6-13; 13:8-9), and it fails to address some of the important common issues (*see id*. at pp. 10-14). Defendant's reliance on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 339 (2011), to imply that absent Class Members have not suffered the same injury is misplaced. The concern in *Wal-Mart* stemmed from significant differences in employment discrimination claims, not from a uniform product false advertising claim like this one. *Id.* The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies. *Hanlon,* 150 F.3d at 1019. Class



KAZEROUNI LAW GROUP, APC

Members here have suffered the *same* injury (monetary harm due to, for example, overpayment) based on the allegedly false "100% Natural Flavors" claim.

## VI. DEFENDANT DOES NOT SHOW THAT ANY INDIVIDUAL ISSUES PREDOMINATE OVER THE MANY COMMON ISSUES

The "predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Coca-Cola's individualized inquiry arguments and challenges to the proposed damages methodologies at this early stage fail for several reasons.

### A. Defendant's Longstanding and Widespread Marketing Practices

#### 1. *The massive "100% Natural Flavors" marketing campaign*

Given the longstanding and widespread practice by Coca-Cola of marketing Sprite and Fanta beverages as "100% Natural Flavors," there can be little doubt the absent Class Members were aware of that marketing claim, whether they purchased in-store or online. *See generally*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012), *overruled in part on other grounds by Olean Whole Sale Grcery Coop., Inc.*, 31 F.4th at 582 n.32. The inquiry is not whether every single television advertisement or online image included that challenged claim, it is whether "100% Natural Flavors" was sufficiently promoted to make a reasonable inference of reliance. The answer to that question is in the affirmative, as Coca-Cola began using that claim "a long time ago" (Dkt. No. 64-12 p. 121:9-13) and conducted a survey during the Class Period showing it is material to consumers (Dkt. No. 64-1 p. 6:10-13).

Television ads and online marketing images and/or text on retailer websites, Coca-Cola's website, and on the SmartLabel website, were <u>in addition to</u> the actual product labeling and packaging carrying the challenged claim. *See e.g., Ehret v. Uber Techs., Inc.,* 148 F. Supp. 3d 884, 895 (N.D. Cal. 2015) ("… in numerous

cases involving claims of false-advertising, class-wide exposure has been inferred because the alleged misrepresentation is on the packaging of the item being sold."); *see also Hadley v. Kellogg Sales Co.,* 324 F. Supp. 3d 1084, 1099 (N.D. Cal. 2018).

Consequently, it is reasonable to infer that consumers were aware of the challenged claim throughout the proposed Class Period, whether in-store or online.

**2. *Dr. Ugone's opinions on marketing materials are unfounded***

The subjective review of marketing materials by Dr. Ugone and his team do not demonstrate any individualized issues. First, Defendant did not produce the *universe* of marketing materials during the Class Period (Ibey Reply Decl., ¶¶ 8, 19, Exhibit 10) and many of the social media links were inactive (Dkt. No. 70-5, Page ID 3375), so Dr. Ugone cannot reach any reliable conclusion about what was viewable *during* the Class Period.

Second, Dr. Ugone relies on *irrelevant* product images that were updated by Coca-Cola on Amazon.com sometime *after* the end of the Class Period, including to remove some of the images for Sprite Lemon-Lime that included the "100% Natural Flavors" displayed prominently on the front of the packaging. *See* Dkt. No. 7-6, Page ID 3377 (accessed by Dr. Ugone on August 17, 2026). For example, before the update, Amazon.com customers were presented with the below outer packaging image for the Sprite mini can 7.5 oz. pack of 10:




This image is included in the initial Complaint filed on May 27, 2025 (Dkt. No. 1, ¶ 53, p. 12; *see also* Dkt. No. 52, ¶ 54, p. 12), used in Dr. Sukumar's survey (Dkt.

KAZEROUNI LAW GROUP, APC

No. 64-11, pp. 14, 47, and 48), and was submitted with the motion in several places (Dkt. No. 64-6, Page ID 895; Dkt. No. 64-24, Page ID 1279; Dkt. No. 64-29, Page ID 1356; Dkt. No. 64-30; 64-44). An earlier version of the packaging from January 20, 2022, is at Dkt. No. 64-37.

Additionally, the following image *continues* to be viewable on Amazon.com for the Sprite Lemon Lime can 7.5 oz. pack of 6, pack of 10, and pack of 20 size offerings. Ibey Reply Decl., ¶¶ 14-25, Exhibits 15-17. It was included in the initial Complaint (Dkt. No. 1, ¶ 93; *see also* Dkt. No. 52, ¶ 95), and it was also submitted with the motion (Dkt. No. 64-30, Page ID 1370):




There were no less than *three* ways in which consumers like Ms. Palmer could view the "100% Natural Flavors" statement for the Sprite Lemon Lime 7.5 oz. pack of 10 on Amazon.com—twice in text (under "Top highlights" and under "Product Description") and at least once on a product image. *See e.g.*, Dkt. No. 64-29, Page ID 1356 and 1359; Dkt. No. 64-30, Page ID 1366, and 1370.

Third, no economic expertise was required for Dr. Ugone to review the marketing materials and give a summary, which does not satisfy Fed. R. Evid. 702. Dr. Ugone is an economist (Exhibit 3, Ugone Trans., 64:16-19), not a marketing expert, or an expert in website design or in website user behavior (Ugone Trans., 64:20-23; 68:13-22; 72:13-17). Dr. Ugone's opinions about the marketing materials

KAZEROUNI LAW GROUP, APC

and speculation about website user behavior are an improper narrative about observations which could be made by a layperson and evaluated by the trier of fact on their own. *See e.g.*, *Tortilla Factory, LLC v. Gt's Living Foods, Inc.,* No. CV 17-7539 FMO (GJSx), 2022 U.S. Dist. LEXIS 141049, at *18 (C.D. Cal. June 9, 2022) (excluding Dr. Ugone's opinions based on "an opaque evaluation of the evidence which may be presented at trial").

Fourth, Dr. Ugone assertions of individualized inquires ignore the reasonable consumer standard. *See Yumul v. Smart Balance, Inc.,* 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) (a "reasonable consumer" standard applies to product mislabeling claims under the CLRA). Because deception and materiality are objective questions, they are "'common question[s]' for purposes of Rule 23(b)(3)." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) (citation and internal brackets omitted omitted).

**B. The Meaning of "100% Natural Flavors" is Not Subject to Individualized Inquiry**

There is no individualized inquiry concerning the meaning of the material "100% Natural Flavors" marketing claim.

***1. No requirement to show a uniform understanding of the challenged marketing claim***

Plaintiff is not required to show that absent Class Members would have a uniform interpretation of "100% Natural Flavors" to establish predominance of common issues. *See Hadley,* 324 F. Supp. 3d at 1116 (a plaintiff does not have the burden to establish there is a uniform understanding among putative class members as to the meaning of the challenged marketing claim under the CLRA).

***2. Sufficient and objective evidence to support materiality***

Present evidence is sufficient to provide an objective showing that a significant portion of consumers acting reasonably could be misled by that claim. This includes the labels and outer packaging; the QR code directing consumers to



KAZEROUNI LAW GROUP, APC

the SmartLabel website; online statements and images; other types of advertisements such as television and social media; consumer complaints; Coca-Cola's own [redacted] survey; Ms. Palmer's testimony of reliance; Matt Palmer's testimony (Melili Reply Decl., ¶ 9, Exhibit B, Matt Palmer Trans., 40:10-19); and Dr. Sukumar's consumer surveys (Dkt. No. 64-11).

The "100%" aspect of the "100% Natural Flavors" statement is significant because it leaves no room for doubt that all the ingredients which impart flavor are claimed by Coca-Cola to be completely natural. Dr. Sukumar's consumer perception survey shows that most of the survey respondents understand "100% Natural Flavors" to mean that "…100% of the ingredients contributing to the flavor are from natural sources" (Dkt. No. 64-11, Page ID 1040, emphasis added; *see also* Page ID 1036, ¶ 3). That is sufficient for purposes of Rule 23(b). Coca-Cola's argument in Footnote 7 of its Opposition misses the point and ignores the reasonable consumer standard. *See Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 869 (9th Cir. 2025). Coca-Cola cannot reasonably equate a simple "natural" claim with its specific and unequivocal "100% Natural Flavors" claim.

Coca-Cola unreasonably faults Plaintiff for not going one step further and asking whether consumers view *manufactured* citric acid (an alleged flavoring ingredient[4]) as coming from natural sources. But there was no need to. The answer is clear that consumers understand carbonated soda beverages claiming "100% Natural Flavors" means *all* the flavoring ingredients come from "natural sources"—meaning from nature. The citric acid is alleged to be artificial; not extracted from plants where citric acid occurs naturally. *See* FAC, ¶¶ 10, 59, 63, 174. Under a reasonable consumer standard, "100%" natural citric acid simply cannot include citric acid which is manufactured by biotechnology. *See Wallenstein*, No. 22-CV-06033-VC, 2024 U.S. Dist. LEXIS 173860, at *3 (N.D.

[4] Whether citric acid is a flavoring ingredient is a merits inquiry (Dkt. No. 64-1 p. 9:21-24), and merits discovery is not yet open (Dkt. No. 57).



KAZEROUNI LAW GROUP, APC

Cal. Sept. 25, 2024) (certifying class involving "100% Whole Grain").

Defendant admits the citric acid "is not extracted directly from a plant." Dkt. No. 64-13 (Response to RFA No. 22). Citric acid is not extracted from sugar; it does not naturally occur in the sugar medium used to feed *Aspergillus niger*. *See* FAC, ¶¶ 59-64. Defendant's reliance on the word "fermentation"[5] in 21 C.F.R. § 101.22(a)(3) conflates the fermentation products contemplated by the regulation with the biotechnology-driven industrial fermentation used to manufacture citric acid at scale. The regulation does not provide that *any* compound produced through *any* fermentation is thereby a "natural flavor." Nor does the use of plant-derived sugar as a feedstock transform the resulting synthesized compound into one "derived from" plant material within the meaning of the regulation. *See* 21 C.F.R. § 101.22(a)(3); Dkt. No. 70-2, p. 14:14-17. Furthermore, reasonable consumers would care that such manufactured citric acid utilizing the *Aspergillis niger* mold "may lead to a harmful inflammatory cascade …" *See* Ibey Reply Decl., ¶ 22, Exhibit 13; *see also*, FAC, ¶ 83, n.33.

In sum, no reasonable consumer would consider industrially manufactured citric acid as coming from "natural sources," especially in light of the FDA's definition of "natural flavors," which distinguishes the case cited by Defendant for bare 'natural' claims.[6] *See Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 683 (2006) ("[n]o reasonable trier of facts could conclude" that an unqualified U.S. origin claim means anything other than the product is "all or virtually all" made in the United States, citing the FTC's policy statement).

\\

[5] Defendant isolates the word "fermentation" from the surrounding regulatory language to improperly treat the mere use of a fermentation process as sufficient to establish that the resulting compound qualifies as a natural flavor.

[6] In *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *14 (N.D. Cal. June 13, 2014), no consumer survey was conducted; and *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 979 (C.D. Cal. 2013), involved a motion to dismiss.



KAZEROUNI LAW GROUP, APC

### 3. *The cases relied upon by Defendant are distinguishable*

The decision in *Hadley,* 324 F. Supp. 3d 1084, rejects similar arguments made by Coca-Cola, including with respect to Plaintiff's proposed damages methodologies. *See id*. at 1094-1111, 1114-1118.

In *Rusoff v. Happy Grp., Inc.*, No. 24-7706, 2026 U.S. App. LEXIS 24726 (9th Cir. Aug. 17, 2026), cited by Defendant, testimony from the plaintiff's expert was excluded as unscientific because it was based merely on personal visits to grocery stores rather than a survey (*id*. at *17).[7] With expert testimony excluded, there was no showing that consumers reasonably associated "pasture raised" to mean anything other than "pasture raised" (*id*. at *21-22), especially where multiple organizations maintained different "pasture raised" standards (*id*. at *4).

In citing *Whitaker v. Pharmavite LLC*, No. CV 22-04732-DMG (MARx), 2023 U.S. Dist. LEXIS 84102 (C.D. Cal. May 9, 2023), Coca-Cola overlooks its [redacted] survey showing that consumers care about the "100% Natural Flavors" statement, even on the *back* label. The challenged claim here is on the front <u>and</u> back of Sprite Lemon-Lime products; and in print that is the same size as, and placed not far from, other important details like the ingredients list. *See* Dkt. No. 64-24.

Unlike in *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 581 (E.D. Cal. 2012), and *Algarin v. Maybelline, Ltd. Liab. Co.,* 300 F.R.D. 444, 457 (S.D. Cal. 2014), Ms. Palmer offers credible expert testimony showing the importance of "100% Natural Flavors" to consumers. Also, *Sevidal v. Target Corp.,* 189 Cal. App. 4th 905, 910 (2010) is unhelpful to Coca-Cola because evidence in that case showed the "vast majority" of absent class members never saw the

---

[7] Similarly, Dr. Ugone's personal observations of online retail prices over a few days in August 2026, are unscientific and do not shed light on sales practices during the Class Period (Exhibit 1, Hamilton Reply Declaration ("Hamilton Reply Decl.")., ¶¶ 41-42).



KAZEROUNI LAW GROUP, APC

webpage containing the misrepresentation. *Id*. at 910. And *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022), involved the need to consider a variable "condition adjudgment" on the pre-accident value of a vehicle.

In *Downey v. Pub. Storage, Inc.,* 44 Cal. App. 5th 1103, 1117 (2020), the proposed class was defined by whether someone obtained a promotional rate, not who relied on it. There was also evidence consumers could make a reservation (such as by phone) without ever seeing the promotional rate (*id*.); some versions of the ads informed consumers that *conditions* applied (*id*. at 1118); and ultimately, the "fees" or "taxes" were disclosed (*id*.).

The challenged claim in *In re Clorox Consumer Litig.,* 301 F.R.D. 436 (N.D. Cal. 2014), only appeared on the back of *some* of the packaging, and Clorox produced evidence that only 11% of consumers read the back panel (*id*.[8]). Here, Coca-Cola offers only speculation that that many class members did not see the marketing claim. Dkt. No. 70-2, p. 18:23-25; *see Bazarganfard v. Club 360 LLC*, 344 F.R.D. 411, 426 (C.D. Cal. 2023) ("…Defendants cannot defeat predominance based on speculation regarding individualized issues unsupported by evidence.")

Looking to *Moorer v. StemGenex Med. Grp., Inc.,* 830 F. App'x 218, 2020 (9th Cir. 2020), Coca-Cola fails to acknowledge it is an *unpublished* opinion and therefore not binding.[9] Regardless, the Court of Appeals held that the district court's certification other was *proper*, except to the extent it did not limit the sub-class to persons who actually saw the challenged claim (*id*.). This supports class certification here, given that the classes are defined in a way to only include

[8] Coca-Cola misstates Dr. Sukumar's deposition testimony concerning viewing a Fanta Orange "label" (it was an outer packaging image), and its contention is overblown. Dkt. No. 70-2, p. 18:7-22; Exhibit 2, Sukumar Rebuttal Report ("Sukumar Rebuttal Report"), ¶ 45.

[9] After remand, the court issued an amended certification order. Ibey Reply Decl., ¶ 23, Exhibit 14, p. 2.



KAZEROUNI LAW GROUP, APC

products which showed the challenged claim. The concern in *Moorer* about some consumers who may have seen a "disclaimer" is simply not present here (*id*.). Further, the patient satisfaction ratings in *Moorer* are akin to customer reviews on Amazon.com, yet absent Class Members here could see the "100% Natural Flavors" statement in a product image and/or in the "About this item" section without having to scroll down to customer reviews. *See e.g*., Dkt. No. 64-29, Page ID 1356.

Unlike in *Tunick v. Takara Sake USA Inc*., 806 F. Supp. 3d 912, 928-9 (N.D. Cal. 2025), the challenged claim is not illegible in the images; Coca-Cola points to no evidence in the marketing that would *contradict* the claim about the natural source of the flavors; and Coca-Cola offers no credible evidence that a subset of purchasers were not exposed to the challenged statement in at least some form.

#### 4. *Mr. Poret's survey does not actually measure materiality*

The survey by Defendant's expert, Hal Poret, does not actually measure materiality but is instead a flawed purchase occasion simulation. Sukumar Rebuttal Report, ¶ 16. It does not directly ask whether the "100% Natural Flavors" claim is important, contrary to published best practices. *Id*. at ¶ 17. Its design suppresses materiality signals through a ceiling effect based on the $1.75 price point. *Id*. at ¶¶ 4, 20. It was the design, not consumer indifference, that produced the null result. *Id*. at ¶ 21. Mr. Poret's screener systematically excluded health-conscious consumers and category-switchers who may have chosen Sprite over a competing product specifically because of the "100% Natural Flavors" statement, rather than include the relevant population. *Id*. at ¶¶ 6, 23. Also, Dr. Sukumar's survey is more reliable than Poret's because it involved four products (two sizes of Sprite Lemon-Lime, and two sizes for Fanta Orange). Sukumar Rebuttal Report, ¶ 22.

#### 5. *Defendant's criticisms of Dr. Sukumar's conducted surveys go to weight or are otherwise unfounded*

The criticisms by Defendant's expert, Dr. On Amir, regarding Dr. Sukumar's materiality and consumer perception surveys go to weight, not admissibility. *See*





KAZEROUNI LAW GROUP, APC

Sukumar Rebuttal Report, ¶¶ 32-33. *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) ("[c]hallenges to survey methodology go to the weight given the survey, not its admissibility."). In any event, Dr. Amir's criticisms are unfounded. Sukumar Rebuttal Report, ¶¶ 24-31.

Dr. Sukumar's consumer perception survey did not require a control group for what it was testing (*id*. at ¶¶ 24-26), similar to *Fitzhenry-Russell v. Dr. Pepper Snapple Grp. Inc.*, 326 F.R.D. 592, 600 (N.D. Cal. 2018), which did not require a test-control design.

Dr. Sukumar's point allocation is the correct design for measuring relative importance of attributes, including "100% Natural Flavors," as noted above. Sukumar Rebuttal Report, ¶¶ 27-28. This includes the threshold of one point for qualifying respondents as part of a conservative design choice that avoids excluding genuine consumers based on an arbitrary higher cutoff (*id*. at ¶ 29), including because a consumer may weigh the attribute modestly and still place high value on accurate disclosure (*id*. at ¶ 30).

With respect to survey questions about consumer perception, respondents answering differently to different labels is the measurement working as intended by Dr. Sukumar, not respondents learning a desired answer. *Id*. at ¶ 31a. It was a proper design choice to instruct consumers to focus on the information on the label or packaging rather than on accumulated brand experience, to match the construct being measured. *Id*. at ¶ 31b. Showing consumers actual product labels is in line with an objective reasonable consumer standard. *Id*. at ¶ 31c.

**C. No Reliance Required for the Breach of Express Warranty Claim**

Plaintiff's breach of express warranty claim does not require a showing of reliance (*see In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (proof of reliance on specific promises or representations is not required for breach of express warranty claim)), which Coca-Cola does not dispute in its Opposition. Coca-Cola also does not dispute that the challenged claim appears on



KAZEROUNI LAW GROUP, APC

Amazon.com's webpages, and it even offers evidence that such statement *continues* to appear there.

Thus, the Court may certify the classes based on the breach of express warranty cause of action even if the Court were to have a concern about whether some absent class members saw the "100% Natural Flavors" statement. *See e.g.*, *Miley v. Belkin Int'l, Inc.*, 2024 Cal. Super. LEXIS 10714 (Los Angeles Cnty. Sup. Ct. Apr. 16, 2024) (certifying breach of express warranty class); *Martin v. Monsanto Co.,* No. ED CV 16-2168-JFW (SPx), 2017 U.S. Dist. LEXIS 135351, at *19 (C.D. Cal. Mar. 24, 2017) (noting several issues subject to common proof).

**D. Defendant Does Not Offer Any Credible Challenge to Plaintiff's Proposed Class-Wide Damages Methodologies**

At the present stage, a plaintiff need only show that "damages can be determined without excessive difficulty and attributed to their theory of liability." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017).

***1. Additional information is needed to conduct the proposed damages analysis at the merits stage***

"[W]here an expert's model has yet to be fully developed, a district court is limited at class certification to making a predictive judgment about how likely it is the expert's analysis will eventually bear fruit." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1031 (9th Cir. 2024). Thus, the key present inquiry is simply whether the plaintiff has "demonstrated the nexus between [her] legal theory . . . and [her] damages model." *Noohi,* 146 F.4th at 867 (quoting *Huu Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 821 (9th Cir. 2019)).

Plaintiff proposes several viable means of establishing damages through common proof. Defendant criticizes the proposed regression model and conjoint survey proposed by Plaintiff's experts as being undeveloped, in its view, but "[t]he question now is not 'whether the expert is right or wrong, just whether his [or her]



KAZEROUNI LAW GROUP, APC

testimony has substance such that it would be helpful to a jury.'" *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 294 (N.D. Cal. 2017) (citation omitted).

Important information is not yet available to Plaintiff's experts for them to further refine the models or conduct the damages analysis (including, for example, historical retail scanner data (e.g., Nielsen), and cost of goods sold information from Defendant and bottlers, and attribute details from Mintel), but they sufficiently explain the type and likely sources of that information. Dkt. No. 64-10, ¶¶ 46, 59-66, 68, 79; Dkt. No. 64-11, pp. 8, 24, 27; Hamilton Reply Decl., ¶¶ 10, 33, 45-48, 51, 64-67, 71, 73-76, 96-101; Sukumar Rebuttal Report, ¶¶ 36-37. *See e.g.*, *Orshan v. Apple Inc.*, No. 5:14-cv-05659-EJD, 2024 U.S. Dist. LEXIS 177689, at *6 (N.D. Cal. Sept. 30, 2024) ("Since those missing datasets would help Dr. Groehn further refine his damage models …, it is too early to conduct a full *Daubert* analysis.").[10] Even now, Defendant is continuing to produce documentation. Ibey Reply Decl., ¶¶ 6-7, 18, Exhibit 9; Hamilton Reply Decl., ¶ 48, n.47.

Thus, Plaintiff's experts provide sufficient detail to demonstrate under a rigorous analysis pursuant to Rule 23 that there is a way to show class-wide relief through generalized proof. Dkt. No. 64-10, ¶¶ 19-36; Dkt. No. 64-11, ¶¶ 18-30; Hamilton Reply Decl., ¶¶ 6-113; Sukumar Rebuttal Report, ¶¶ 3-43. *See Heckman v. Live Nation Ent., Inc.*, No. 22-CV-00047-GW-KESx, 2025 U.S. Dist. LEXIS 269121, at *4 (C.D. Cal. Dec. 12, 2025) (Judge Wu) ("Because Defendants still do not persuasively demonstrate to this Court the possibility that any individual issues would predominate over common ones, the Court finds it unnecessary to effectively make a choice between the parties' experts.").

\\

\\

[10] Retailer CVS is also preserving evidence. Melili Reply Decl., ¶ 10, Exhibit C (CSV Declaration).



KAZEROUNI LAW GROUP, APC

### 2. *The proposed regression model is sound*

Dr. Ugone's criticisms of Plaintiff's proposed regression analysis are meritless. *See* Hamilton Reply Decl., ¶¶ 50-69. Variables such as promotional pricing, price by sales channel and retailer, package size and type, and geographic location[11] can be accounted for in a regression model. *See* Hamilton Reply Report, ¶ 53. *See e.g.*, *Martin*, 2017 U.S. Dist. LEXIS 135351, at *24. Dr. Ugone also makes unsubstantiated and incorrect comments on the importance of measuring the hedonic value. Hamilton Reply Report, ¶¶ 57-69. Dr. Hamilton's citation to literature concerning "natural" claims was merely to show why he believes he is likely to find a Price Premium on the "100% Natural Flavors" claim as a species of the more generic natural claim. *Id*. at ¶¶ 12-13.

### 3. *The alternatively proposed conjoint approach is sound*

Defendant's experts' criticisms of the proposed conjoint, in the alternative to regression analysis, should be rejected. *See* Hamilton Reply Decl., ¶¶ 70-87. *See e.g., Wallenstein v. Mondelez Int'l, Inc*., 2024 U.S. Dist. LEXIS 173860, at *4 (crediting the "expert reports explaining that th[e] case is suitable for a price premium damages model using conjoint analysis [] is sufficient at the class certification stage.").

Dr. Ugone is not an expert in survey design. *See Hudock v. LG Elecs. U.S.A., Inc.*, No. 16-1220 (JRT/KMM), 2020 U.S. Dist. LEXIS 144781, at *23 (D. Minn. Aug. 12, 2020) ("[Dr.] Ugone is … not qualified to render opinions on CBC design."). Thus, Dr. Ugone is not qualified to speak to survey design. Hamilton Reply Decl., ¶ 87.

Dr. Ugone makes unfounded claims regarding the proposed conjoint analysis that are already addressed by Dr. Hamilton with respect to the regression analysis (Hamilton Reply Report, ¶¶ 70-112) and also explained by Dr. Sukumar concerning

---

[11] Defendant's references to San Francisco's Sugary Drinks Distribution Tax is a distraction. Hamilton Reply Decl., ¶ 51.



KAZEROUNI LAW GROUP, APC

setting price levels and other attributes and the limitations of Dr. Ugone's [redacted] contention (Sukumar Rebuttal Report, ¶¶ 13, 36-43).

A conjoint can be reliably used to determine consumers' willingness-to-pay based on the "100% Natural Flavors" claim, which can then be converted into a Price Premium. Hamilton Reply Report, at ¶¶ 75-78. *See e.g.*, *In re ConAgra Foods, Inc.,* 90 F. Supp. 3d at 946 (rejecting similar criticisms by Dr. Ugone regarding proposed methodologies to calculate a price premium from willingness-to-pay); *Bechtel v. Fitness Equip. Servs.,* 339 F.R.D. 462, 472 (S.D. Ohio 2021) (certifying product false advertising case and impliedly rejecting Dr. Ugone's criticism regarding supply-side considerations).

Dr. Ugone purely speculates that consumer demand for carbonated beverages may have materially changed during the Class Period; and it is a common practice for a conjoint to be conducted after suit is filed. Hamilton reply Report, ¶¶ 84-85. Dr. Amir also repeatedly speculates that the proposed conjoint would be unreliable. *See* Sukumar Rebuttal Report, ¶ 33.

Dr. Amir's criticisms of the proposed conjoint go to weight, not admissibility, including as to focalism. *Id. See e.g.*, *Morales v. Kraft Foods Grp., Inc.*, No. LA CV14-04387 JAK (PJWx), 2017 WL 2598556, at *15-16 (C.D. Cal. June 9, 2017) (focalism argument goes to weight, not admissibility). Dr. Amir's remaining arguments are based on premature complaints about the conjoint not being fully designed at this stage (Sukumar Rebuttal Report, ¶¶ 32-33), which is addressed in Section VI.D.3., above.

**4. *Defendant's line pricing contention is no obstacle to class certification***

Coca-Coal's line pricing argument is flawed and otherwise presents no obstacle to certification. First, during the discovery process, Coca-Cola misrepresented that it does not provide Manufacturer's Suggested Retail Price





KAZEROUNI LAW GROUP, APC

("MSRP") information,[12] now arguing that the Class Products are line priced by retailers. Mr. Sonmezer very recently [redacted] (*see* Exhibit 4, Sonmezer Trans., 36:6-8; 37:14-23; 45:20-46:1; 82:16-19), [redacted]. Regardless, Defendant's [redacted] argument, which is no hinderance to class certification, is addressed in rebuttal by Plaintiff's experts. Hamilton Reply Report, ¶¶ 16-46, 51, 78-79, 85, 88-90, n.102; Sukumar Rebuttal Report. ¶¶ 40-42.

Second, Mr. Sonmezer lacks personal knowledge [redacted]. *See* Exhibit 4, Sonmezer Trans., 34:20-35:6, 40:15-17. Dr. Ugone's opinion based on [redacted] is entirely dependent on Mr. Sonmezer's declaration. Hamilton Reply Decl., ¶ 90.

Third, there is evidence that retailers in California do not line price Defendant's sodas. *Id.* at ¶¶ 105-109. Even Mr. Sonmezer [redacted] (Exhibit 4, Sonmezer Trans., 37:1-5).

Fourth, even if, *arguendo*, Defendant's sodas were line priced by retailers during the Class Period, that does not mean its competitors did the same. For example, Dr Pepper/Seven UP, Inc. sells a popular lemon-lime soda called "7UP," which has been represented as having "100% Natural Flavors" (Hamilton Reply Decl., ¶ 103, n.114; Melili Reply Decl., ¶ 11, Exhibit D (Screenshot of 7UP product on Amazon.com showing "100% Natural Flavors" in an image), presenting a comparator for a Price Premium analysis in addition to Coca-Cola's brands.

Fifth, it is speculative for Defendant to say there can be no Price Premium on

[12] Ibey Reply Decl., ¶ 19, Exhibit 10 (Emails on May 27 and 28, 2026). Defendant's misrepresentation was the basis for Plaintiff removing Topic 14 from the Rule 30(b)(6) deposition (*id*. at ¶ 9).



KAZEROUNI LAW GROUP, APC

the "100% Natural Flavors" claim without credible empirical analysis. Hamilton Reply Decl., ¶¶ 37-44. Which party is ultimately right is a merits determination. *See McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 297 (C.D. Cal. 2011).

In *Mier v. CVS Health*, No. 22-55665, 2023 U.S. App. LEXIS 19472, at *3-4 (9th Cir. July 28, 2023), another *unpublished* decision cited by Defendant, the conducted conjoint survey did not take into account actual evidence that the supply for hand sanitizer materially changed due to the Covid-19 pandemic (which is very different from the sale of carbonated beverages), and the plaintiff's expert did not analyze where the supply curve intersects with market demand. Dr. Hamilton explains that the [redacted] argument is immaterial because the Price Premium is determined by the marginal consumer in the market at the point of sale, and because there is no supply-side adjustment to consider under Defendant's claim of line pricing. Hamilton Reply Report, ¶¶ 16-30, 50-53, 77-78. *Weiner v. Snapple Bev. Corp.*, 2010 U.S. Dist. LEXIS 79647 (S.D.N.Y. Aug. 3, 2010), an out-of-circuit decision on a summary judgment—a very different procedural posture—involved different damages methodologies than those Ms. Palmer proposes (*id*. at *20), and the expert provided only a bare bones report (*id*. at. *22) primarily based on newspaper articles and websites about general consumer perception (*id*. at *23).

**5. *Measuring unjust gains to Defendant***

There is nothing unfit or inadequate about Plaintiff's unjust gains methodology for the Unjust Enrichment claim. Dr. Hamilton proposes to calculate unjust gains to Coca-Cola based on a percentage of its concentrate sales. Hamilton Reply Decl., ¶¶ 2, 88-109. "The term 'benefit' connotes any type of advantage." *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 722 (2003). The "100% Natural Flavors" claim is alleged to result in higher sales prices at retail, and the enrichment "may take any form, direct or <u>indirect</u>." Restatements of the Law 3d, Restitution and Unjust Enrichment, § 1, comment (d) (emphasis added).

\\

KAZEROUNI LAW GROUP, APC

#### 6. *Mischaracterization of Plaintiff's theory of damages*

Plaintiff's theory of damages does not rely on the "fraud on the market" theory used in federal securities litigation. *See e.g., Orshan,* 2024 U.S. Dist. LEXIS 177689, at *58-61.

## VII. CONCLUSION

In conclusion, the Court should grant the motion for class certification. In the event the Court denies the motion, Plaintiff respectfully requests leave to file an amended motion.

Dated: October 1, 2026

**KAZEROUNI LAW GROUP, APC**

By: */s/ Jason A. Ibey*
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Victoria Palmer and the proposed Classes

KAZEROUNI LAW GROUP, APC

**CERTIFICATION OF COMPLIANCE PURSUANT TO L.R. 11-6.2**

The undersigned, counsel of record for Victoria Palmer, certifies that this brief contains 6,979 words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: September 17, 2026

**KAZEROUNI LAW GROUP, APC**

By: /s/ *Jason A. Ibey*
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*, Victoria Palmer and the proposed Classes

KAZEROUNI LAW GROUP, APC