**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Gil Melili, Esq. (SBN: 337116)
gil@kazlg.com
245 Fischer Ave., Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
*Victoria Palmer*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **VICTORIA PALMER, SUE KIM, and IVAN ZERMENO, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE COCA-COLA COMPANY,**<br><br>**Defendant.** | Case No.: 2:25-cv-04777-GW (CTSx)<br><br>**REPLY IN SUPPORT OF MOTION TO EXCLUDE EVIDENCE FROM DEFENDANT THE COCA-COLA COMPANY'S RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>**Date:** October 1, 2026<br>**Time:** 8:30 a.m.<br>**Courtroom:** 9D, 9th Floor<br>**Judge:** Hon. George H. Wu |

## I. INTRODUCTION

The Court should look to the plain language of the parties' unambiguous stipulation, memorialized in a verified interrogatory response. The pertinent stipulation between Victoria Palmer ("Ms. Palmer" or "Plaintiff") and The Coca-Cola Company ("Coca-Cola" or "Defendant") is unambiguous on its face. Coca-Cola takes an untenable position that the stipulation is about a time period only.

Defendant discounts the reality that it could have carved out an exception to the stipulation for the eight (8) labels it now introduces to oppose class certification that do not contain the alleged "100% Natural Flavors" misrepresentation. After all, Defendant did include an express limitation on the stipulation with respect to the placement of the "100% Natural Flavors" representation on product labels.

For these reasons, and other reasons set out in this reply, the Court should grant Ms. Palmer's motion to exclude evidence from Coca-Cola's opposition to her motion for class certification. Alternatively, Ms. Palmer should be given leave to take an additional Rule 30(b)(6) deposition from Coca-Cola as to the eight (8) at-issue labels, paid for by Defendant.

## II. LEGAL STANDARD

The relevant legal standard was articulated in Plaintiff's motion. Dkt. No. 74-1, pp. 3-4. Additionally, unless there is ambiguity, the Court should look to the plain language of the parties' stipulation to interpret its meaning. *See United States v. Petty*, 80 F.3d 1384, 1387 (9th Cir. 1996) ("Like any other contract, we must interpret [a stipulation] so as to carry out the intention of the parties."); *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (1999) ("Whenever possible, the plain language of the contract should be considered first."). As explained in *Operating Engineers' Pension Tr. Fund v. Clark's Welding & Mach.*:

> In interpreting an unambiguous contractual provision, the court must give effect to the plain and ordinary meaning of the language used by the parties. . . . Where contract

> language is clear and explicit and does not lead to absurd results, the court ascertains intent from the written terms and goes no further. . . . The court's paramount consideration in construing a stipulation is the parties' objective intent when they entered into it. . . . That intent is to be inferred, if possible, solely from the written provisions of the contract.

688 F. Supp. 2d 902, 910 (N.D. Cal. 2010) (internal citations omitted).

## III. THE TERMS OF THE STIPULATION UNAMBIGUOUSLY PRECLUDE COCA-COLA FROM RELYING ON THE EIGHT AT-ISSUE LABELS IN RESPONDING TO MS. PALMER'S MOTION FOR CLASS CERTIFICATION

"Where contract language is clear and explicit and does not lead to absurd results, the court ascertains intent from the written terms and goes no further." *Operating Engineers' Pension Tr. Fund*, 688 F. Supp. 2d at 910.

The stipulation's terms here are unambiguous. Coca-Cola expressly stated that it "***will not*** take the position in responding to the . . . motion for class certification that the labels and/or packaging for the Class Products did not contain the 100% Natural Flavors representation during any part of the Class Period . . .." Dkt. No. 74-3 (emphasis added). Taking this language at face value leads to only one rational interpretation—Coke is precluded from arguing that any of its Class Products' labels did not include the "100% Natural Flavors" representation in opposing class certification, including any version of the labels. Any other interpretation would run afoul of the express terms, especially the interpretation Coca-Cola now attributes to the stipulation. Applying Coca-Cola's interpretation would essentially delete the word "not" from the emphasized language above (*see, supra*, p. 2), contrary to how the stipulation actually reads.

Enforcing the stipulation's express language will not lead to an absurd result. Indeed, "[b]ecause stipulations serve both judicial economy and the convenience of the parties, courts will enforce them absent indications of involuntary or uninformed

consent." *CDN Inv. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999).[1] Enforcing the parties' stipulation would serve these interests because it narrows the issues the Court must consider for the pending motion for class certification. On the other hand, Coca-Cola's interpretation of the stipulation would materially change its terms by limiting its scope in an unclear manner—an absurd result.

Therefore, the Court should grant Ms. Palmer's motion because the express terms of the discovery stipulation unambiguously preclude Coca-Cola from introducing the eight (8) at-issue labels in opposing class certification.

## IV. ASSUMING, *ARGUENDO,* THAT THE LANGUAGE WERE AMBIGUOUS, CONSIDERING THE CONTEXT OF THE PARTIES' NEGOTIATIONS DOES NOT YIELD A DIFFERENT RESULT

The context of the negotiations leading up to the stipulation demonstrates that Coca-Cola agreed not to oppose class certification based on the argument that the Class Products' labels did not include the "100% Natural Flavors" representation.

Coca-Cola included a *caveat* in the stipulation, stating that it "reserves the right to point out differences in the placement or size of the claim in opposing class certification." Dkt. No. 74-3. If Coca-Cola was so concerned about preserving its arguments as to the eight labels, it could have (and should have) expressly so stated.

The stipulation followed Coca-Cola earlier representation that "the '100% Natural Flavors' representation appears on the packaging and/or labeling of the Class Products that [Coca-Cola] has produced . . . and that the '100% Natural Flavors' representation would have appeared on the packaging and/or labeling of the Class Products sold in California during the *entirety* of the Class Period" on May 22, 2026 (Dkt. No. 74-5) (emphasis added). This was *before* the parties even reached

[1]Coca-Cola cannot argue that there are any "indications of involuntary or uninformed consent" because it reaffirmed its promise on two (2) separate occasions. Dkt. Nos. 74-3, Page ID 3744; Dkt. No. 74-4, Page ID 3750. *See also* Dkt. No. 74-5, Page ID 3756.

the separate stipulation at issue here, for which Plaintiff agreed in exchange to remove Topic No. 2 from the Rule 30(b)(6) deposition notice.

Coca-Cola's June 5, 2026, verified supplemental interrogatory response is to an interrogatory asking it to "IDENTIFY all of YOUR variations of the CLASS PRODUCTS during the CLASS PERIOD." Dkt. No. 74-4 (Interrogatory No. 7). Defendant chose to memorialize the at-issue stipulation there. Regardless, apart from the limitation of "CLASS PERIOD," which is already inherent in the fact that the request seeks information relating to "CLASS PRODUCTS," there is nothing in Ms. Palmer's request for the stipulation that remotely suggests it only related to a *time period* during which the "100% Natural Flavors" representation appeared on the Class Products. Again, if Coca-Cola wanted to carve out the at-issue eight labels from its stipulation and supplemental response to Ms. Palmer's interrogatory, there was a way for it to do so—it did not.

Tellingly, Coca-Cola does not point to any communication reflecting Coca-Cola's supposed intent to make any reservation of rights to argue that some versions of a few labels did not contain the "100% Natural Flavors" representation in challenging class certification.[2]

Notwithstanding that Defendant produced the eight at-issue labels weeks before the stipulation was entered into, Defendant did not negotiate a separate carve out for those eight labels or more broadly for certain "versions" of labels. As explained by Plaintiff in the opening brief, an important purpose of the stipulation was to avoid needing to ask Defendant's Rule 30(b)(6) witness questions about the

[2] Coca-Cola's reference to Ms. Palmer's counsel saying "ships passing by night" takes that statement out of context. Ms. Palmer's counsel, Mr. Ibey, was referring to the position Coca-Cola's counsel took during the August 25, 2026, call rather than making any concession. Coca-Cola's own exhibit supports this reality because Mr. Ibey responded to Coca-Cola's email by stating "we continue to disagree on this matter," Dkt. No. 77-7, which shows the opposite of a concession.

eight documents reflecting potential labels, at least some of which appeared to Plaintiff to be drafts or outside of the Class Period proposed in Plaintiff's motion for class certification. Dkt. No. 64.

For example, the document showing a Fanta Orange 12 oz. can label at TCCC_0000108 (Dkt. No. 69-3, Page ID 2441) says at the top, "DO NOT USE FOR PRODUCTION." The Fanta Orange 12 oz. bottle pack of 4 label without the challenged claim (Dkt. No. 69-3, Page ID 2442, TCCC_0000111) has a production date one day before a different label for the same product (in a different and unredacted document, TCCC_0000039,[3] which has the same Universal Product Code). Furthermore, the document showing a Sprite Chill Strawberry Kiwi label reflected at TCCC0000123 (Dkt. No. 69-3, Page ID 2445), has an irrelevant production date (reflected in the unredacted version, TCCC_0000049[4]).

Therefore, even if the language of the stipulation were ambiguous (it is not), the context of the parties' negotiations leading to that stipulation do not support Coca-Cola's position.

## V. COCA-COLA'S CONDUCT IS BAD FAITH OR AT LEAST TANTAMOUNT TO BAD FAITH

"The Supreme Court has found 'bad faith' conduct to include a wide range of willful improper conduct, such as delaying or disrupting litigation, willful abuse of the judicial processes, and hampering with enforcement of a court order." *Stanley v. Mason*, No. 22-60014, 2022 U.S. App. LEXIS 35409, at *3 (9th Cir. Dec. 22, 2022).

The facts here are simple and are at least tantamount to bad faith. Coca-Cola agreed to express language precluding it from arguing that the labels of its Class Products did not have the "100% Natural Flavors" representation on at least two

---

[3] *See* Dkt. No. 78, 2:4-8.

[4] *See id*. at 2:8-10.

occasions. Then, despite having been fully aware of the stipulation it made, Coca-Cola nevertheless relied on eight labels without that representation in opposing class certification. *See* Dkt. No. 69, 9:16-18; *id.* at 24:10-11; Dkt. No. 69-3 (Exhibit 2 to Zalesin Decl.); Dkt. No. 69-15, ¶ 57(c) n.113.

Coca-Cola's conduct demonstrates willful and knowing conduct that runs afoul of the express terms of its stipulation, including when hiding its intention during the meet and confer process for the motion for class certification—when Coca-Cola would not disclose the basis for its belief that the proposed class definitions were overly broad, only to then oppose class certification by arguing the eight at-issue labels here did not contain the challenged marketing statement. Coca-Cola attempts to sidestep this issue by contending the eight at-issue labels instead only go to other class certification requirements such as predominance, notwithstanding the implication that those labels cause the class definitions to be overly broad. Regardless of how characterized, Coca-Cola's argument still does not avoid the practical import of its reliance on the eight labels to oppose class certification, which is something Coca-Cola promised it would not do.

*Stanley v. Mason* is clear in stating that bad faith conduct includes "a wide range of willful improper conduct," 2022 U.S. App. LEXIS 35409, at *3, not just the conduct exemplified in that case. Further, Ms. Palmer is not seeking the extraordinary remedy of monetary sanctions but instead the preclusion of particular evidence, which is "among the most restrained." *Higgs v. Costa Crociere S.P.A. Co.*, 969, F.3d 1295, 1306 (11th Cir. 2020). In *C.B. v. Morano Valley Unified Sch. Dist.*, the court characterized the defendant as having "exhibited <u>extreme</u> bad faith in failing to comply with its discovery obligations[,]" awarding the more extraordinary remedy of monetary sanctions rather than the more pacified sanction of evidence exclusion. *See* 2023 U.S. Dist. LEXIS 9706, at *21-24 (C.D. Cal. Jan. 18, 2023) (emphasis added).

Moreover, the alternative requested remedy of allowing Ms. Palmer to obtain additional *limited* discovery in the form of a further Rule 30(b)(6) deposition is not outside the bounds of the Court's inherent authority, as that authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). There is no reason to require a Rule 37 motion in seeking such remedy and increase the motion practice on this narrow issue—the Court has inherent authority to grant Plaintiff's requested relief now.

Accordingly, the Court should grant Ms. Palmer's motion because Coca-Cola's conduct is bad faith or at least tantamount to bad faith.

## VI. CONCLUSION

For the foregoing reasons, Ms. Palmer respectfully requests that the Court grant her motion.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

Date: September 17, 2026

By:/s/ Jason A. Ibey
Jason A. Ibey
*Attorneys for Plaintiff,*
*Victoria Palmer*

## CERTIFICATION OF COMPLIANCE PURSUANT TO L.R. 11-6.2

The undersigned, counsel of record for Victoria Palmer, certifies that this brief contains 2,030 words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: September 17, 2026

**KAZEROUNI LAW GROUP, APC**

By: *<u>/s/ Jason A. Ibey</u>*

Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*, Victoria Palmer